Ellis, J.
 

 This is an appeal from a final decree dismissing a bill of complaint which was exhibited by J. W. Jordan, C. J. Jordan and others against Annie G. Jordan, widow, Jennie Williams and her husband and others. The snit began in 1925 and sought the cancellation of two deeds of conveyance executed by Rufus P. Jordan on the 4th day of January, 1921, and the 30th day of June 1923 respectively; the first conveying a certain lot in the City of St. Petersburg in Pinellas County to Annie G. Jordan, his wife, and the second conveying the same lot to Peter H. Moak and Georgia A. Moak. The last named grantees, on the same .day, June 30, 1923, reconveyed to Rufus P. Jordan and Annie G. Jordan, as it is alleged in the bill, without consideration and for the purpose of vesting the title in Jordan and his wife as by the entirety.
 

 The bill alleges that the deeds were void as they were ■merely an attempt to dispose of the homestead of Jordan in violation of the provisions of the Constitution.
 

 The complainants are alleged to be the children of Rufus P. Jordan by a first wife. The widow, Annie G. Jordan, the second wife, and her children by Rufus, Jennie Williams and Dennis Jordan, and the Moaks are made defendants. The land described in the deeds was city lot Seventeen of Gulf Peninsular Improvement Company’s Subdivision.
 

 ■ Rufus Jordan died March 30, 1924, which was less than one year after the execution of the second deed. It is alleged that Rufus Jordan resided upon the land as his homestead for a period long prior to January, 1921, and While occupying the land as his homestead he executéd the
 
 *1588
 
 first deed to his wife. That deed is attacked because it was alleged to be without consideration; that it was never delivered and was an attempt to dispose of the homestead. The second deed it is alleged was void because that deed, as well as the reconveyance by the Moaks, resulted from an agreement between Jordan and his wife whereby Jordan dismissed his suit to cancel the first deed which was made t.o his wife and Moak was used merely as a conduit through which to pass the title to Jordan and his wife by the entireties.
 

 The prayer was that the three deeds be declared to be void and the complainant’s rights in the property be declared and that same be partitioned and for general relief. Jennie Williams and Dennis Jordan, two of the defendants, disclaimed any right, title or interest in the property. Annie G. Jordan answered, denying that the property was occupied by Rufus with his family as a homestead at the time of his death and denied that he had occupied it as a homestead for many years prior to his death. It - was admitted however that when he made the deed to her in January, 1921, Rufus was residing on the property with his wife Annie, averred that the deed was delivered to her, that the suit to cancel it was dismissed as the result of a compromise agreement between her and her husband and the deed executed to Moak who reconveyed to her and her husband.
 

 It appears from the averments of the answer that Rufus bought the lot and in 1919 borrowed a sum of money with which to build an apartment house upon it; that when the house was erected Rufus and his wife “occupied the same for a short time and then moved to another home where they continued to remain until October, 1921.” It was during the period of their occupancy of one of the apartments that the deed of January, 1921, was made by Rufus
 
 *1589
 
 Jordan to his wife conveying the property. According to the answer, Rufus and his wife abandoned their apartment and went to live elsewhere and shortly afterwards separated and did not live together again. Their children had married and moved away. Tbe children by the first wife were not living with them, so Rufus, after the separation, retained a room in the house while his wife lived elsewhere. The family was broken, had disintegrated, each unit living separately and independently to itself with its own nucleus of a family circle. In this situation Rufus filed his bill for a cancellation of the first deed, which action resulted in a compromise between him and his wife whereby the suit was to be dismissed and they would join in a conveyance to a third person who in turn should convey the fee to them ‘1 by the entirety. ’ ’
 

 When this arrangement was completed it was agreed between them that Rufus should have the four apartments on the south and she the four on the north. They occupied rooms in their respective sides of the house, not resuming their marital relations and each paying his or her share of the expense of maintenance of the building, taxes and mortgage. Then Rufus died and about a year afterwards his children by his first marriage brought the suit for partition and cancellation of the two deeds.
 

 The answer set up a good defense as to the validity of the second deed at least. It was the result of a compromise between husband and wife who were separated from each other and the family dispersed. Rufus Jordan was no longer the head of a family within the meaning of the Constitution, Sec. 1, Art. X. See Herrin v. Brown, 44 Fla. 782, 33 So. R. 522; Matthews v. Jeacle, 61 Fla. 686, 55 So. R. 865; Johns v. Bowden, 68 Fla. 32, 66 So. R. 155; Johns v. Bowden, 72 Fla. 530, 73 So. R. 603.
 

 
 *1590
 
 The only circumstance which differentiates this case from the case of Herrin v. Brown,
 
 supra,
 
 and that of Matthews v. Jeacle,
 
 supra,
 
 in which the definition of “head of a family” was given, is that in those cases where the family had dispersed leaving only husband and wife living together and one dies the other is no longer the head of a family and entitled to the constitutional exemptions, in the instant case the family had dispersed and the husband and wife had separated, each maintaining a separate existence and neither dependent upon or recognizing the other’s authority.
 

 According to the holding in the case of John v. Bowden, 68 Fla.,
 
 supra,
 
 to constitute “a head of a family there must be at least two persons who live together in the relation of one family, and one of them must be the head of that family.”
 

 On the issues presented by bill and answer and amendment a master was appointed to take testimony. When the testimony was in the chancellor entered his decrée holding that the lot in question did not constitute the homestead of Rufus Jordan at the time when the first deed wás made nor when the second deed was made, he held that both deeds were valid and dismissed the bill. Prom that decree the complainants appealed.
 

 Even if the first deed should be held to be invalid as an attempted conveyance of a homestead by the husband to his wife the second deed was valid as no such objection existed. As a husband may convey land by deed directly to his wife, Sec. 5670 Comp. Gen. Laws 1927, the first deed was valid
 
 pro tanto
 
 if the entire lot conveyed could not be regarded as the homestead. Under the authority of the case of Smith v. Guckenheimer, 42 Fla. 1, 27 So. R. 900, only such buildings upon the urban homestead as constitute the actual residence and business house of the owner are
 
 *1591
 
 impressed with the exemption which is withheld from the buildings or other improvements which do not constitute such residence and business house. An apartment house had been built upon the lot. It consisted of eight apartments, they' consisting of two buildings each containing four apartments, one only of those apartments was occupied by Jordan and his wife when the first deed was made, so in that view the deed was not void in its entirety, But as the second deed was free from such objection the decree was not erroneous on the ground that the complainants were not entitled to the relief prayed.
 

 We think that the evidence supports the chancellor’s decree and as it is not made to appear that his findings were clearly erroneous the decree should stand affirmed. See Jackson v. Jackson, 80 Fla. 557, 86 So. R. 510; Burgess v. Wirt, 91 Fla. 425, 108 So. R. 169; Powell v. Powell, 77 Fla. 181, 81 So. R. 105; Kreher v. Morley, 84 Fla. 121, 92 So. R. 686.
 

 The decree is affirmed.
 

 Terrell, C. J., and Brown, J., concur.
 

 Whitfield, P. J., and Strum and Buford, J. J., concur in the opinion and judgment.