John H. O'Neal v. P. A. Miller, as Executor of the Estate of Herman Devoe, also Known as Herman Deveaux, Deceased, *et al.*

196 So. 478
En Banc
Opinion Filed May 24, 1940

*Roger Edward Davis,* for Appellant;

*Morrow & Mayes,* for Appellee.

Whitfield, J.—In this case the husband, the head of the family, was residing with his wife and minor unmarried daughter on his homestead in Florida, when the wife and minor unmarried daughter went to another State. They did not return to Florida for several years and until after the death of the husband. This marital relation continued and the husband resided on the homestead until his death. The wife did not acquire a permanent home or domicile separate from that of her husband; and it was her privilege, if not her duty, to return to the husband on the homestead at any time during his life, even if in law, it was not also the privilege or duty of the minor unmarried daughter to return to her father's home where he continued to reside till his death.

Under such conditions and circumstances there was no abandonment of the homestead of the husband in Florida on which he resided with his wife and unmarried daughter as his family, before the wife and daughter went to another State, and on which homestead the husband continued to reside until his death, the marital relation continuing and neither the wife nor the minor unmarried daughter having acquired a home or a domicile separate from that of the husband and father.

The essential facts in each case control the decision. The facts in this case are stated in the opinion of Mr. Justice Brown.

In Herrin v. Brown, 44 Fla. 782, 33 So. 522, 103 Am. St. Rep. 182, all the children were grown and had permanently established homes away from the father's homestead; and when the wife died, though the husband continued to live *alone* on the home place, it was no longer the homestead of the husband because he had no wife and no one lived with him as a member of his family.

In Jordan v. Jordan, 100 Fla. 1586, 132 So. 466, the husband and wife by agreement and conduct abandoned the marital relation and the homestead exemption rights, the children having homes of their own.

In Lanier v. Lanier, 95 Fla. 522, 116 So. 867, the homestead property was held to have been abandoned by husband and wife.

In Johns v. Bowden, 68 Fla. 32, 66 So. 155, the children had permanently moved from the father's homestead and the mother had died, but a granddaughter lived with the surviving husband and father as a member of his family.

In this case the wife and minor daughter left the husband's homestead in Florida because of his cruelty; and there was no divorce or agreed separation of the husband

and wife and no intended abandonment of the homestead by the wife when she and the minor daughter left the home because of the husband's cruelty, and no intention thereafter to abandon the homestead is shown or can be inferred from anything in the record brought here. The marital relation continued and the wife and minor daughter had the privilege of returning to the home where the father continued to live until his death. When the husband died he was a married man living on his homestead, and he and his wife had not abandoned or alienated the homestead property and had not by agreement abandoned the marital relation. See Nelson v. Hainlin, 89 Fla. 356, 104 So. 589.

The father's mortgage executed in 1927 was good against him as to the property other than the homestead rights in the real estate known as "the South 30 feet of east half of Lot 9, block 37, according to the Plat of Waddell's Addition to the Town of Miami, * * * on which is located a house known as 1512 N. W. First Court, Miami, Florida." The widow having died pending this suit, there are no dower rights. The homestead passed to the surviving daughter.

Decree reversed for appropriate proceedings.

TERRELL, C. J., CHAPMAN and THOMAS, J. J., concur.

BROWN and BUFORD, J. J., dissent in part and concur in part.

BROWN, J. (dissenting in part and concurring in part).—Herman Devoe, now deceased, owned two lots in the city of Miami, Florida, where he and his wife resided until April 26, 1927. On that date, the wife, Rosa, deserted her husmand and took the now sole surviving one of three children, then a minor, with her to New York to live. Rosa gave as her reason for leaving "cruel treatment—cruelty."

On December 9, 1927, Herman Devoe executed a mortgage covering the property to Isaac Little securing the pay-

ment of ten promissory notes. Through subsequent assignments the notes and mortgage, purporting to have been executed also by Rosa Devoe, came into the hands of John H. O'Neal.

The two lots are 60 x 100 feet each and on them is the former home of Herman Devoe, four other small residence houses, one a "duplex," and a small building constructed for a fish store. All the buildings other than the home were constructed and used by Devoe for rental purposes. Rosa Devoe testified that he had no other means of livelihood, but as she was in New York for seven years before Herman's death, and had been gone for seven months when the mortgage was executed, her testimony on this point is of little weight. There was some further testimony tending to corroborate hers, but it was rather vague and related mainly to the last few years of Herman's life. The houses were all occupied at the time of hearing but the store had for some time been vacant. During the three years after the death of Herman Devoe in 1934 and before the return of Rosa Devoe, the property was managed by the executor of the estate of Herman. When Rosa, after ten years absence in New York, returned to Miami in December, 1937, she moved into and occupied the house that had been her former husband's home, after this suit was begun.

O'Neal, appellant here, on April 22, 1937, filed a bill to foreclose the mortgage against the executor of the estate of Herman Devoe, Rosa Devoe, deceased's wife, and the minor daughter, Cloefield, who has reached her majority since the institution of this suit, and other collateral heirs.

Answer was filed which denied the execution of the mortgage and notes by Rosa, and further alleged that the property was the homestead property of Herman Devoe and that the mortgage had not been executed in accordance

with the constitutional provisions for. such execution. A special master was appointed, testimony was taken, and in his report the special master found that that part of the property on which Herman resided was a homestead and that the mortgage not being executed according to the constitutional provisions for executing mortgages on home-steads, was not binding as to it; that the remainder of the property, not being homestead, the mortgage constituted a valid lien thereon, subject to the wife's right of dower therein. ·

Both parties filed exceptions to the master's report, those of the defendant Rosa alleging that the master erred in finding that the homestead only embraced that part of the property on which was located the actual home of Devoe being sustained, and the bill of complaint was dismissed by final order of the court. Plaintiff appeals, asking us to determine what part of the property, if any, is homestead property. Rosa Devoe died subsequent to the entry of the final decree. Her daughter, Cloefield, was appointed administratrix *ad litem* of her mother's estate.

In prior adjudications on the law of homesteads, this Court has handed down two cases that are closely connected with the case at bar, viz.: Cowdery v. Herring, 106 Fla. 567, 143 So. 433, 144 So. 348; and McEwen v. Larson, 136 Fla. 1, 185 So. 866. Appellants rely on the latter; appellees, the former.

In the Cowdery case, *supra,* a widow was residing as the head of a family on certain homestead property in the city of Lakeland. She had constructed a two-story building on a portion of the property and rented it as a garage and storage building. There was also a one-story building on the property which Mrs. Cowdery rented as a paint shop. Neither the garage nor the smaller building had ever been

personally used by Mrs. Cowdery as a part of her own business or residence. The question propounded to this Court was whether or not such portions of the homestead property as were rented by Mrs. Cowdery as a principal means of her livelihood lost their identity as exempt homestead property. In answer to that question, Mr. Justice DAVIS, speaking for the Court, said:

"The term 'business house' is not defined in the Constitution relating to urban homestead exemptions, but it is plain that the intendment is to preserve as exempt a reasonable portion of the homestead improvements, in addition to the owner's actual residence, when it appears that the improvements concerned are being used as a means of making the owner's livelihood.

"Here the garage and paint shop in effect constitute a portion of the widowed homesteader's 'business house' under the circumstances, because it was not already shown that the widow, upon whose homestead land these rented structures were located, had any other real 'business house.' On the other hand, it was shown that Mrs. Cowdery depended principally upon the rents from these structures as her means of living.

"The whole property admittedly acquired in the first instance a status as exempt homestead property many years before this suit was filed. Appellee's right to now subject it to his judgment must rest upon the sufficiency of his showing that the structures represented by the garage and the paint shop have been in effect abandoned as parts of the exempt homestead by their being rented for income-producing purposes to support the homestead owner, so as to bring them within the rule laid down in Smith v. Guckenheimer, *supra*. See third headnote in Clark v. Cox, 80 Fla. 63, 85 So. 173.

"A majority of the Court have reached the conclusion that it has not been sufficiently shown by the attempted proof that the garage and paint shop situated on the otherwise admittedly exempt homestead land have been by the owner in this particular case so placed or used by her that they should be held to constitute separate improvements distinct from the exempt residence and permissively exempt 'business house' of Mrs. Cowdery. Therefore there is error in the decree appealed from, in so far as the decree has ordered the garage and paint shop held subject to levy and sale under appellee's judgment and execution."

In the McEwen case, *supra,* relied on for reversal by appellants, the owner of homestead city property built on a severable portion thereof an apartment house and garage for rental purposes. In affirming the circuit court's decree, holding that when the owner built such apartment house and garage for rental purposes he abandoned that portion of the property upon which the buildings were constructed as homestead property. Mr. Justice WHITFIELD, in an opinion concurred in by the five participating Justices, said: "An apartment house for renting purposes is not a 'business house of the owner' of a homestead within the meaning of Section 1, Article X of the Constitution of Florida."

Three cases are cited in support of this statement, after which he continues: "The holding here is not inconsistent with Cowdery v. Herring, 106 Fla. 567, 143 So. 433, 144 So. 348, where the owner living on her homestead merely rented for a tool house a small garage that had been used as a part of the city homestead property. In this case the owner built on a severable part of the homestead city property an apartment house with a garage for rental purposes, thereby abandoning the portion of the original homestead land that is reasonably appropriate for the rental purposes

of the apartment and garage constructed, not for use of those entitled to the exemption, but for rental purposes, on the south end of the property."

In order to understand the reasoning behind these statements it becomes necessary for us to examine the three cases given as authority for them.

First: Anderson Mill & Lbr. Co. v. Clements, 101 Fla. 523, 134 So. 588. It was held here that where the owner of homestead property and his wife had given their son-in-law permission to build a home on part of the homestead property, that as to that part, the homestead would be considered abandoned.

Second: Jordan v. Jordan, 100 Fla. 1586, 132 So. 466. Here, bill of complaint was filed to cancel the conveyance of an apartment house on certain property by deed not in accordance with the requirements of the Constitution for the conveyance of homestead property. In affirming the decree of the circuit court dismissing the bill of complaint, it was said: "Under the authority of Smith v. Guckenheimer, 42 Fla. 1, 27 So. 900, only such buildings upon the urban homestead as constitute the actual residence and business house of the owner are impressed with the exemption which is withheld from buildings or other improvements which do not constitute such residence and business house."

One of the factors taken into consideration in holding the property was not homestead property was the fact that the husband and wife had separated and were living apart from each other and all of the children were married and had their own homes.

Third: Smith v. Guckenheimer, 42 Fla. 1, 27 So. 900. Both the holding and the facts of that case are set forth in the third and fourth headnotes, as follows:

"3. Under Section 1, Article X, Constitution of 1885,

the exemption of a homestead in an incorporated city or town does not extend to improvements other than such as constitute the residence and business house of the owner, nor to the land upon which they are situated, even though such improvements are inseparably attached to or form parts of an indivisible building which likewise constitutes the residence and business house of the owner. (MABRY, J., dissenting.)

"4. S., the head of a family consisting of a wife and eight minor children residing in this State, was the owner of a lot of land in an incorporated city containing less than one-half acre upon which was situated a two-story frame building, so constructed that there were five store rooms therein on the ground floor, one of which was used by the owner as his business house, while the other four were rented to tenants and not used or occupied by the owner either for residence or business purposes. The second story consisted of bedrooms, all of which, except one which was vacant, were occupied by S. and family, and had been for two years previous thereto, as a residence, and for the entertainment of lodgers and boarders. The building was incapable of being physically divided without destroying it. G. & Sons, execution creditors of S., levied upon the lot of land claimed as exempt, and S. filed his bill to restrain the sale thereof, claiming it to be exempt as his homestead. G. & Sons filed their answer and cross-bill denying that all the property was used as a homestead, and praying in the cross-bill that the court set aside as a homestead so much of the property as was proper, and subject the residue to sale under the execution. The court entered a decree requiring S. to select so much of the premises as would secure to him a residence and business house, dividing the building by perpendicular lines so that his place of residence should

be immediately over his place of business. S. having failed to select as required by the decree, the court dismissed his bill; and upon the cross-bill by consent of G. & Sons, decreed that the south thirty-nine feet of the building, with all vacant portions of the lot, be set apart to S., as exempt, and that the residue of said building and the land upon which it was situated was subject to sale under the creditors' execution. S. appealed from the decree, claiming that the entire building and lot should have been set apart to him as exempt, but making no contention that the allotments to him was unfair or insufficient for residence and business purposes: Held, that the decree be affirmed. (MABRY, J., dissenting.)"

Mr. Chief Justice TAYLOR, in a majority opinion, said: "The 'exemption, then, that is limited and curtailed by the presence thereon of other improvements or buildings than the residence and business house of the owner, necessarily means the land within the prior prescribed area that is dedicated to the support of such other improvements or buildings than the residence or business house of the owner; in other words, if such urban resident confines his improvements and buildings to his own residence and business house, then, no matter what may be the design, size, or value of the buildings, they, together with the half acre of ground upon which they stand, are exempt to him from his debts; but when he puts other buildings or improvements upon the half acre than his residence and business house, he thereby dedicates those portions of the exempted half acre devoted to the support and uses of such other improvements or buildings to other uses than those of the legally tolerated residence and business purposes of himself, and thereby abandons such portions of the half acre and by such abandonment forfeits his right to exempt them from his debts."

He also says: "The case under consideration presents the complication of a single indivisible building that combines within itself the residence and business house of the owner, besides other grounds of the ground floor, permanently leased to tenants. These rooms thus permanently leased to tenants, did they constitute a separate building to itself on another part of the owner's half acre away from the residence, would, undoubtedly, together with the land that they occupied, or that was separately devoted to them, not be exempt."

And to these statements, Judge TAYLOR has added: "The result of the discussion is, in short, that in case of separate or detached buildings upon the urban half acre that are not the residence or business house of the owner, nor necessary out-buildings used in connection therewith, such separate or detached buildings, together with the ground that they occupy and the ground around them separately devoted to their use, are not exempt."

In a dissenting opinion in this same case, Judge MABRY said:

"I think that where a homesteader places upon the exempt half acre improvements or buildings detached from and other than the residence and business house, or when the improvements are so placed that they constitute separate improvements from the residence or business house, they, together with land supporting them, become subject to execution sales * * *."

It is to be understood that some of these statements are dictum, but they were necessarily presented by the Judges in writing the opinion in that case to show the line of reasoning which carried them to the logical conclusion—that of affirming the decree of the chancellor ordering partition of the property into homestead and non-homestead property.

After an understanding of the reasoning behind the two cases it becomes apparent that there is a real distinction between them. In the Cowdery case the garage and paint shop were improvements in the form of commercial establishments, from which the owner derived her principal means of livelihood, and as such were held to constitute a "business house" within the intendment of the Constitution. In the McEwen case, while it is true that the apartment house was a source of income, such income was derived from persons who came to reside on the property, and the apartment house and land required for its operation and maintenance were held to have been abandoned as homestead property.

Applying the principles in the above cases, our conclusion is that the houses which were built and maintained for residential purposes by Hermon Devoe did not constitute homestead property at the time of the execution of said mortgage on December 9, 1927.

The master found that the property described as the South 30 feet of the East ½ of Lot 9, one of the two lots hereinabove referred to, on which is located a house known as 1512 N. W. First Court, Miami, being the house in which Herman Devoe had lived for many years, was at the time of the execution of said mortgage the homestead of Herman Devoe, who on that date had a wife and two minor children, although they were not living in the house with him. He reached this conclusion from the testimony of Rosa Devoe that she had to leave the home in April of 1927, because of cruel treatment, and that she did not sign the mortgage or notes nor acknowledge the same. The only testimony as to why Rosa Devoe left her husband's home was, that to the question "Why did you leave?" she answered: "Cruel treatment—cruelty." While this laconic response did not

definitely say that the cruel treatment was visited upon her by her husband, the master inferred, and perhaps correctly, that such was her meaning.

The testimony further shows that Herman and Rosa Devoe had three children, two boys and a girl; that one of the boys had died in 1915 long before Rosa went to New York and that the other boy, who was in school in North Carolina, when Rosa left Miami, died in New York later on, just when the testimony does not show, but the master found that when the mortgage was executed on December 9, 1927, there were two minor children living, the daughter Cloefield, who was nine years old, and the son who was in North Carolina. When Rosa deserted her husband and went to New York in April of 1927, she took her daughter with her, and her son must have later joined his mother there, as she testified that he died in New York. Herman Devoe continued to live on by himself in the house on his said property above mentioned, and Rosa testified that he did not contribute anything to the support of herself and her daughter nor was there any correspondence between them from the time she left Miami until her husband died in 1934. Nor does it appear that Herman ever contributed to the support of his son.

The contention of appellee is that where a wife is forced to leave her husband on account of cruel treatment, she can still retain her claim to homestead exemption in her husband's property as against a mortgage lien executed by her husband without her signature. There are some authorities from other States sustaining this contention. See 13 R. C. L. 681-682. See also 29 C. J. 933.

The question thus presented is not free from difficulty in view of our decisions defining who constitutes "the head of a family."

In Johns v. Bowden, 68 Fla. 32, 66 So. 155, Mr. Justice WHITFIELD, writing the opinion, said: "In order to constitute a homestead in property under the Florida Constitution, the property must be owned by the head of a family residing in this State * * *. To constitute a head of a family there must be at least two persons who live together in the relation of one family, and one of them must be the head of that family."

In Matthews v. Jeacle, 61 Fla. 683, 55 So. 865, this Court said:

"Only that homestead 'owned by the head of a family residing in this State' is protected by Section 1 of Article X of the Constitution of 1885. While some authorities hold that one who has acquired a homestead does not lose his right to the exemption so long as he continues to use the property as his home, although because of death or removal the family is broken up (Palmer v. Sawyer, 74 Neb. 108, 103 N. W. Rep. 1088, 12 Ann. Cas. 715), yet this Court is clearly committed to the doctrine that, where all the children in a family have arrived at their majority, upon the dissolution of the family by the permanent removal of its members, and the father dies leaving the mother as the sole remaining member of the former family, such mother under these circumstances, ceases to be the head of a family within the contemplation of our Constitution, her former homestead loses its status as a homestead, and she may, unless otherwise incapacitated, devise the same by her last will. Herrin v. Brown, 44 Fla. 782, 35 South. Rep. 522, 103 Am. St. Rep. 182."

In the case of Nelson v. Hainlin, 89 Fla. 356, 104 So. 589, this Court held that where a homestead has once been acquired, it can be waived only by abandonment or by alienation in the manner provided by law, and that whether there

has been such an abandonment of a homestead as to deprive it of its exemption character must be determined by consideration of all the pertinent facts and circumstances of each case as it arises. The opinion in that case was concurred in by all the members of the Court and was written by Mr. Justice WHITFIELD. The 4th headnote, which sets out the facts of that case, reads as follows:

"Where a homestead has been established and occupied as the family home, and subsequently the children of the homestead owner become of age and acquire homes of their own, and the mother goes to a distant State and remains a year or more caring for an invalid daughter-in-law, leaving the husband remaining in charge of the homestead owned by him renting it or rooms therein as a means of living, and the wife returns to and remains on the homestead taking boarders or renting rooms to support herself and her enfeebled husband, the owner of the homestead, who, because his wife is unable to properly care for him and make a living for both, lives in a neighboring town with a suitable person who cares for him as a boarder, until a short time before his death from old age, when he lived with his daughter until his death, in the town where the homestead was, he when able and so disposed occasionally visiting the wife at the homestead, the wife continuing to support the aged husband and herself by living in the homestead and renting rooms therein, the homestead was not abandoned as such, but it retained in its character as his homestead or the family home owned by him at his death, there having been no intention to abandon the homestead as the family home and no other homestead having been acquired."

In the case of Jordan v. Jordan, 100 Fla. 1586, 132 So. 466, the first two headnotes read as follows:

"1. When the members of a family disperse, the children permanently departing from the home setting up their own establishment, and husband and wife separate, each maintaining a separate existence and neither dependent upon or recognizing the other's authority, the father under such circumstances ceases to be the head of a family within the contemplation of the Constitution."

"2. To constitute a head of a family there must be at least two persons who live together in the relation of one family and one of them must be the head of that family."

In Lanier v. Lanier, 95 Fla. 523, 116 So. 867, we held that: "A temporary absence from the homestead of the head of a family in search of health, pleasure or for business reasons will not deprive the homestead of its character and status as such unless there was a design of permanent abandonment; but that where there is such a permanent abandonment of the homestead as a place of permanent abode, this deprives the property of its homestead character."

That case involved a suit in equity brought by the children of a deceased father against their step-mother to cancel and set aside a deed which conveyed directly from the father to his wife certain lands which the complainants alleged were a part of their father's homestead. The chancellor had found that there was an abandonment of the homestead prior to the execution of the deed, and this Court held that there was evidence in that case sufficient to sustain the conclusion. It was stated in the opinion in that case that: "A homestead is abandoned by taking up a permanent abode at a distant place." And that: "The character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence."

Of course, the Court had in mind in that opinion the question of whether or not the father and head of the family had in fact abandoned the property in question as a homestead.

Here the question is whether the abandonment of the homestead, which was owned by the husband, by the wife, who takes with her the only child then living in the home and leaving the husband by himself for seven years, until his death, and then continues to remain away for three years more before she returned to the property, constituted an abandonment of all homestead rights which she had in the property and resulted in such a dispersal of the family as that her husband, living entirely alone for seven years preceding his death, was no longer the head of a family within the meaning of Section 1 of Article X of the Constitution. It might be more accurate to say that this case turns upon the question as to whether or not, after his wife and daughter left him in April of 1927, his son being already away and never returning, Herman Devoe could be any longer considered as "the head of a family" within the meaning of the Constitution.

Rosa Devoe doubtless had good reasons for deserting her husband and home. Her testimony on this point, while brief, so indicates. But the fact remains that when Rosa deserted her husband in 1927, and left the home in which they had been living since 1914, taking with her to New York the only child then living in the home, her subsequent conduct indicates that she did so intending never to return. She did not look to, nor receive from, her husband any support, either for herself or her children. She did not correspond with him and it does not appear that Herman Devoe ever saw or attempted to see either of them, or the boy who was in school in North Carolina, and who sub-

sequently passed away in New York. Nor does it appear that Herman Devoe ever contributed anything to the support of said boy. The fact that Rosa did not return for ten years, which was three years after her husband's death, speaks her intentions more loudly than words. This left Herman Devoe as the only person residing on the property. His family was completely dispersed and never assembled again during his lifetime, nor does it appear that there was any correspondence whatever between him and his wife and daughter thereafter, nor that he made any effort whatever to contribute to the support, or to get in touch with, any one of them. Just when the boy departed this life is not made clear. The picture presented therefore is that of a husband and father left absolutely alone in the home, for seven years, and, whether through his fault or not, his family were completely and permanently dispersed during all that period. He never saw any of them again, and he died seven years after his family dispersed. Under this state of facts can it be said that Herman Devoe was "the head of a family" when this mortgage was executed by him in December, 1927, some seven months after the dispersement of his family? We think not. If he was not then the head of a family, the former home of the family had lost its status as a homestead, and even the innocent minor children, living with their mother in a distant State, cannot complain on account of the execution of the mortgage on this non-homestead property. As was said by Mr. Justice WHIT-FIELD in his able opinion in the case of Norton v. Baya, 88 Fla. 1, 102 So. 361: "In Florida the organic exemptions apply only to 'a homestead' owned by the head of a family residing in this State.' The homestead feature must be impressed upon the property before the exemptions can apply." (Citing authorities.)

From the foregoing, our conclusion necessarily is that as to those houses and the portions of the lots on which they were built, which were held by Herman Devoe solely as *rental property,* they were, if for no other reason, thereby stripped of their homestead character, and that the remainder of the property, the house and the portion of the lot on which the house was built, in which Herman Devoe lived, could not be classed as a homestead when the mortgage was executed because Herman had at that time ceased to be the head of a family within the meaning of the Constitution as construed in the cases above cited. But as the signature to the mortgage purporting to be that of Rosa Devoe was shown not to have been her signature, the execution of said mortgage by her husband did not operate to deprive Rosa Devoe of her dower rights in the property described in the mortgage. However, the rights of Rosa Devoe to dower, which terminated with her death, and the rights of Cloefield Devoe as heir-at-law do not appear to have been brought in question in this case.

The decree of the circuit court dismissing the bill of complaint should, in my opinion, be reversed and the cause remanded for further proceedings not inconsistent with the foregoing opinion.

Buford, J., concurs.