**RILEY v. DOING et al.**
**Civil Action No. 1353-M.**

District Court, S. D. Florida,
Miami Division.

April 30, 1948.

See also 66 F.Supp. 825.

Redfearn & Ferrell and A. C. Dressler, all of Miami, Fla., for plaintiff.

Shutts, Bowen, Simmons, Prevatt & Julian, of Miami, Fla., for defendants.

De VANE, District Judge.

This suit was originally brought under the Florida Declaratory Judgment Statute, F.S.A. § 87.01 et seq., to secure a declaratory judgment, construing the last will and testament of Adelaide A. Riley, deceased. The will was executed June 30, 1938. It was prepared in Baltimore, Maryland, under the directions of testatrix's brother, Charles H. Doing, an attorney. Plaintiff had no knowledge of the execution of the will until after the death of testatrix and never saw it, or a copy, until the day it was offered for probate.

Testatrix died July 28, 1945, leaving no issue. She was a resident of Miami, Florida on the date will was executed and at the time of her death. The will was admitted to probate September 17, 1945, by the County Judge of Dade County, Florida and suit to construe the will was filed in the Circuit Court, Eleventh Judicial Circuit, in and for Dade County, Florida, on October 22, 1945. The case was removed to this court by defendants, because of diversity of citizenship of the parties.

The testatrix, in her last will and testament, first provided for the payment of her just debts and then bequeathed all her jewelry and wearing apparel to her sisters who survived her. The will then provides:

"All of the rest, residue and remainder of my property and estate, whether real, personal or mixed, and wheresoever situate, I give, devise and bequeath unto my brother, Charles H. Doing, in trust, for the term of the natural life of my beloved husband, Bart A. Riley, for the purpose of collecting rents, profits and income therefrom, and paying said rents, profits and incomes to my said husband and all of my brothers and sisters, during the term of the natural life of my said husband, in the following proportions:

"Forty per cent thereof to my husband, Bart A. Riley; ten per cent thereof to my brother, Claude D. Doing; ten per cent thereof to my sister, Amy D. McFarline; ten per cent thereof to my sister, Florence A. Bielefeld; ten per cent thereof to my brother, Charles H. Doing; ten per cent thereof to my sister, Elizabeth M. Hutchinson; and the remaining ten per cent thereof to my sister, Ruth E. Davidson. Upon the death of my said husband the trust hereby created shall terminate and all of my said property, whether real, personal or mixed, and wheresoever situate, shall be divided among my said two brothers and four sisters, per stirpes and not per capita, share and share alike, absolutely; provided, however, that should my said husband renounce this will and elect to take the share of a surviving husband in a deceased wife's estate, under the laws of inheritance of the State of my domicile at the time of my death, then and in that event the above created trust shall not take effect, and I then give, devise and bequeath all of my property, then remaining, whether real, personal or mixed, and wheresoever situate, to all of my said brothers and sisters, per stirpes and not per capita, share and share alike, absolutely.

"In recognition of the fact that my said husband has a lucrative law practice in the State of Florida, and therefore, could ill afford to devote his time to the active management of my estate, and particularly the operation of my hotel at Miami Beach, Florida, known as the 'Adobar,' I desire that my said trustee and executor give preference to my brothers-in-law, Fred S. McFarline or James D. Davidson, as active manager of said hotel, with such counsel, advice and assistance as my husband may see fit to render."

Plaintiff construed the proviso of the will as giving him the right to elect under the will to permit the trust to become effective and take forty percent of the income of the trust estate or to renounce the will and take the share of the trust estate to which he would be entitled under the laws of inheritance of the State of Florida, in the same manner as though the testatrix had died intestate as to the trust estate. In conformity with this interpretation plaintiff filed in the County Judge's Court, in and for Dade County, Florida, and "Election Under Terms of Will," carefully following the language of the proviso in which he elected as "between said forty percent

and the share provided for him in said estate under the laws of inheritance of Florida * * *" to take the share of a surviving husband in said estate under the inheritance laws of Florida.

Defendants contended that the will gave plaintiff no right of election, but provided in clear and simple language that if he renounced the will he could take only what property testatrix failed to dispose of by will, which, in this case, was none. Defendants further contended that since testatrix died testate as to all her property, wheresoever situate, that nothing remained for plaintiff to inherit under the laws of inheritance of Florida, and that my making and filing the renunciation of the will plaintiff had deprived himself of any interest, by will or otherwise, in his deceased wife's estate.

This issue came on for hearing before the court and in a Memorandum Opinion, filed July 8, 1946, the court held:

A. That the proviso in the will did not authorize plaintiff to renounce the will and take by inheritance the trust estate of testatrix, both real and personal, situate in Florida.

B. That the so-called "election" did not have the effect of terminating the trust created by the will or depriving plaintiff of his interest therein under the provisions of the will.

The Memorandum Opinion so holding will be found in 66 F.Supp. 825.

Immediately following the filing of the Memorandum Opinion in the case, plaintiff sought and secured authority to file an amended complaint, under which, the answer thereto and the evidence introduced in the case, the following issues are raised:

1. Considering the complete history of the property owned by testatrix at the time of her death, was it the intention of testatrix in her will to permit plaintiff, at his election, to take all the Florida property, included in the trust estate, under the laws of inheritance of Florida?

2. As to the Florida properties, was an estate by the entireties created in the personal property in the Miami Beach First National Bank and also situate in the Adobar Hotel, which was not devisable under the will, and also, was there an estate by the entireties in the Florida real estate attempted to be devised by the will?

3. In the event an estate by the entireties in the real estate did not exist, then would plaintiff be entitled to a homestead in his equity in the Adobar Hotel property?

4. Was a trust created in plaintiff's favor in the real and personal property comprising the trust estate?

As was the situation on the first hearing, the facts in the subsequent hearing upon the Amended Complaint and Answer thereto are not in dispute. Defendants called no witnesses, but did introduce three exhibits and entered into a stipulation with plaintiff as to certain facts. Therefore, only legal questions are presented to the court by the Complaint, the Answer of defendants and the evidence in the case. Before passing to the consideration of the legal questions presented by the record, the court will make its findings of the material facts as shown by the testimony bearing upon these issues.

## Findings of Fact

Plaintiff and testatrix were married August 17, 1933. They had both been married previously. At the time of their marriage plaintiff was an active and successful lawyer, practicing at the Miami, Florida, Bar. He represented testatrix in the suit her previous husband brought against her for divorce and secured for her, in that divorce proceeding, a property settlement of $10,000, cash, and the payment of his own attorney's fee. Testatrix owned certain other stocks and bonds at the time of her marriage to plaintiff. The record does not specifically disclose the total assets owned by her at that time, but from the record it appears that including the $10,000 paid her by her former husband, her total assets amounted to somewhere between $25,000 and $30,000.

Shortly after testatrix was divorced by her former husband and before her marriage to plaintiff, she purchased certain real estate in Miami, Florida. Two of the lots purchased by her in Tierra Alta Subdivision she still owned at the time of her death. These lots were appraised at $750. She pur-

chased another lot on May 6, 1933, and paid $10,500 therefor. She sold this lot in 1944 for approximately $14,000 net. The remaining lots purchased by her prior to her marriage were subsequently sold and the proceeds were used primarily for the acquisition of the land and the construction of the hotel property involved in this litigation.

The first joint real estate venture by plaintiff and testatrix occurred on August 13, 1934 when testatrix purchased Lot 4, Block E, Surprise Lake Subdivision, for the sum of $1,050 and plaintiff undertook the construction of a home thereon, with his own funds, and funds secured on a mortgage given upon said lot and building. This home was completed in 1935 and continued to be the home of plaintiff and testatrix until January, 1937, when they established their residence and home in the Adobar Hotel.

On March 5, 1935, plaintiff and testatrix purchased Lots 31, 32, 33 and 34, Block 2, Second Ocean Front Subdivision, Miami Beach, Florida, on which the Adobar Hotel was constructed. These lots were purchased for the sum of $9,000 and the evidence shows that both plaintiff and testatrix furnished part of the purchase money. The evidence does not show the amount furnished by plaintiff and the amount furnished by the testatrix, but it does appear from the evidence that testatrix furnished more of the money to buy these lots than was provided by plaintiff.

Plaintiff and testatrix did not have sufficient money to construct the hotel and furnish it and it became necessary for plaintiff to borrow money and secure credit from almost every source available to him to complete, furnish and equip the hotel. It is impossible to determine from the record the specific amount provided by plaintiff and by testatrix, for the acquisition of the lots and the construction of, furnishing and equiping the hotel. Plaintiff's testimony is to the effect that the best estimate he was able to furnish the court from the testimony submitted as to the expenditures of each is that testatrix provided approximately $20,000 and plaintiff provided approximately $25,000 for the construction and equipment of the hotel property. The contractor failed to deliver possession of the hotel as provided by his contract, on or before December 1, 1936, and did not deliver possession of it to plaintiff and testatrix until January 26, 1937. This added materially to the financial difficulties of plaintiff and testatrix and the 1936–37 Seasonal operation was unprofitable. The hotel is operated as a Seasonal Hotel in Miami Beach, Florida.

It appears from the evidence in the case that testatrix provided little funds for further financing or for the operation of the hotel after it was placed in operation and that plaintiff bore the brunt of providing all the funds required to keep the property out of bankruptcy or prevent a foreclosure of the mortgage given to secure part of the funds for the construction of the hotel. The evidence shows that between the date the hotel opened in January, 1937, to June 30, 1938, the date on which the will in controversy was made, plaintiff contributed in net cash the sum of $11,198.75 and testatrix the sum of $56.94. It was this contribution of plaintiff and the small additional contributions made by plaintiff and testatrix during the remainder of 1938 that saved the hotel property. Beginning with the opening of the 1938–39 Season and thereafter, the hotel was successfully operated and made money, although the evidence shows that plaintiff contributed additional funds to accelerate the satisfaction of the debts against the hotel property.

Upon the completion of the hotel and in the early days of its operation, plaintiff and testatrix each closed their personal bank accounts and opened an account in the name of "Adobar," and testatrix, alone, was authorized to draw checks against this account. The evidence shows that plaintiff deposited in this account all his net earnings from his law practice and all said earnings beyond his personal requirements and those of his wife went towards the operation and financing of the hotel. This practice on the part of plaintiff continued up until the death of testatrix. Testatrix managed the hotel from the day it opened until her death, but the evidence shows that all business transactions involving financial matters affecting the hotel were handled exclusively by plaintiff. Several suits brought upon debts owed by the hotel were brought

against plaintiff and judgments secured in these suits were generally satisfied by funds provided by plaintiff.

Plaintiff testified that after the operation of the hotel became profitable and its financing was on a sound basis plaintiff undertook to return to testatrix every dollar she had invested in the hotel property. This was accomplished, in part, by purchasing for her a Summer Home in New Lebanon, Columbia County, New York, title to which was taken in the name of testatrix. Improvements and additions were, from time to time, made on this property, until, according to the testimony of plaintiff, there had been invested in the property and in the furnishings a sum in excess of $15,000. In addition, testatrix withdrew from the bank account of "Adobar," over a period of years, in excess of $5,000, which she had, in cash, in a safety deposit box, to which she alone had access, in the Miami Beach First National Bank, when she died.

It is plaintiff's contention that he has shown from the evidence introduced, after giving credit for these withdrawals, that on the date of the death of testatrix substantially if not all the net investment in the hotel property and furnishings had been contributed by him. As stated above, defendants submitted no evidence to contradict this testimony and it is their contention "that all of the monies paid by plaintiff * * * for taxes, principal and interest on the mortgage, for building houses, for purchasing real estate, for building the Adobar Hotel, for hotel furnishings, deposits with the Miami Beach First National Bank in the account styled 'Adobar,' in the account with the First National Bank of Miami and the American National Bank of Miami, in the name of testatrix, were all gifts made by plaintiff, Bert A. Riley, to his then wife." This quoted statement from Paragraph XV of Defendants' Answer very well sums up the questions presented to the court upon the issues raised by the pleadings and the testimony submitted by the parties. The court will consider the issues raised in the order heretofore stated.

1. *Considering the Complete History of the Property Owned by Testatrix at the Time of Her Death, Was It the Intention of Testatrix in Her Will to Permit Plaintiff, at his Election, to Take All the Florida Property Included in the Trust Estate, Under the Laws of Inheritance of Florida?*

When this question was before the court in July, 1946, the only evidence submitted at that time was a copy of the will and a copy of plaintiff's "Election Under Terms of Will" and it was upon this evidence the court held that plaintiff did not have the right under the will to renounce the same and take all real and personal property of testatrix located in Florida and included within the trust estate, under the Florida laws of inheritance.

Plaintiff now contends that upon the testimony submitted and upon the showing that has been made by him as to how all the property located in Florida in testatrix's name at the time of her death was accumulated that it shows a clear intention on the part of testatrix to give him the option to take this property under the Florida laws of inheritance, at his election, or to permit members of her family to share in its enjoyment. The court is still of the opinion that under the clear and unambiguous language of the will plaintiff was not given such election and that the will does not bequeath to plaintiff an election to take all the property of testatrix located in Florida, enumerated in the trust. The court adheres to its former decision upon this issue.

2. *As to the Florida Properties, Was an Estate by the Entireties Created in the Personal Property in the Miami Beach First National Bank, and Also Situate in the Adobar Hotel, Which Was Not Devisable Under the Will, and Also, Was There an Estate by the Entireties in the Florida Real Estate Attempted to be Devised by the Will?*

The pleadings and the evidence show, without contradiction, the small amount of household property belonging to testatrix at the time of her death. Plaintiff asserts no right, title or interest in this property. The pleadings and testimony also show the small amount of household property owned by plaintiff prior to the construction of the Adobar Hotel, which was in the hotel at the time of the death of testatrix. Defendants assert no claim

of right, title or interest in this property. The evidence shows that plaintiff acquired some of the furnishings for the hotel from a source in Cuba. This property was paid for by plaintiff and the court holds upon the evidence it was not reached by the will of testatrix.

■ The evidence also shows that after the hotel was completed a large amount of property was purchased to furnish and equip it. Some of this property was billed in the name of plaintiff, but the greater part was billed to the "Adobar." It was all paid for by checks issued on the "Adobar" account. As to all this personal property the evidence clearly shows all the essentials to be present to create an estate by the entireties in the property, and the court holds that an estate by the entireties did exist in this property and, therefore, it was not devisable under the will.

■ There was on deposit with the Miami Beach First National Bank the sum of $17,947.20, in the "Adobar" account at the time of the death of testatrix. While the record shows that all deposits in this account came from earnings of the Adobar Hotel and of plaintiff, they could be withdrawn only upon checks signed by testatrix and for this reason failed to possess all the essentials for an estate by the entireties. Testatrix also had on deposit $7,237.42 with the Bowery Savings Bank of New York City, N. Y., and $2,564.75 with the Emigrant Industrial Savings Bank of New York City, N.Y. The sources of these deposits are not disclosed by the evidence. These funds could be withdrawn only upon checks signed by testatrix and for this reason also fail to possess all the essentials for an estate by the entireties. Other miscellaneous cash items in the estate inventory also fall in the same category and none of these cash items enumerated in this paragraph pass to plaintiff as an estate by the entireties.

■ Testatrix also had $5,845 in cash in a safety deposit box in the Miami Beach First National Bank. The parties stipulated that during the lifetime of testatrix she was the only person who had access to the safety deposit box. Plaintiff testified that all the cash found in this box was provided through the "Adobar" account and was intended as a partial reimbursement to testatrix for the amount she had contributed towards the cost of construction of the hotel. This money, therefore, was not held by testatrix as an estate by the entireties and it passes under the will.

■ As to the real estate, the evidence falls short of one essential to create an estate by the entireties. Title to the property at all times, resided in testatrix and for that reason an estate by the entireties did not exist in the real estate.

3. *In the Event an Estate by the Entireties in the Real Estate Did Not Exist, Then Would Plaintiff be Entitled to a Homestead in His Equity in the Adobar Hotel Property?*

■ The evidence shows that immediately upon the completion of the hotel property it became the domicile of plaintiff and testatrix and remained their domicile and home until after the death of testatrix. The evidence further shows that the lots on which hotel building is located comprises less than one-half acre of land. See Florida Constitution, Article 10, Section 1. The evidence also shows that plaintiff claimed and secured a homestead exemption on this property immediately upon it becoming their residence and home and that this homestead exemption in the property continued until testatrix's death. Dade County assessed the property in the name of plaintiff as the head of the family, which was necessary to entitle plaintiff and testatrix to the homestead exemption. It is the law of Florida that the head of the family may claim the homestead exemption where he has an equitable interest in the property. It is not essential that he hold the legal title to the land. Bessemer Properties, Inc., v. Gamble, 158 Fla. 38, 27 So.2d 832. It is also the law of Florida that where the residence and business house is so constructed on a half acre of land, or less, in a municipality, and the property occupied as a residence is indivisible from the other portion of the building, the homestead will extend to the entire land and the improvements thereon. Jordan v. Jordan, 100 Fla. 1586, 132 So. 466; O'Neal v. Miller, 143 Fla. 171, 196

So. 478, 129 A.L.R. 295. It is also the law of Florida that a homestead cannot be bequeathed, but passes under the law of descent and distribution. See F.S.A. §§ 731.-27 and 733.01. Therefore, if plaintiff had an equitable interest in the Hotel property by reason of his contributions towards its purchase and construction, entitling him to a homestead exemption, it could not be bequeathed by the testatrix, but passes to plaintiff as the sole surviving heir.

■ Plaintiff offered evidence which he contends shows that at the time of the death of testatrix his equity in the Adobar Hotel property was approximately $55,000 and that of the testatrix was $82.85. The accuracy of these figures cannot be definitely determined from the evidence, but it is clear that the net investment of testatrix in the property amounted to very little, if it did, in fact, exceed the amount claimed by plaintiff. While it is true that the placing of property by a husband in the name of his wife is ordinarily presumed to be a gift, yet, in a case like the one at Bar, to so hold would constitute a miscarriage of justice under the law. See Skahen v. Irving, 206 Ill. 597, 69 N.E. 510; Norman Inc., v. Holman, 105 Colo. 294, 97 P.2d 739.

■ The undertaking of the construction of the hotel called for finances far beyond the immediate capacity of the plaintiff and testatrix and this property was constructed, its business developed and made a paying investment, primarily through the labors of plaintiff. It afforded him and his wife security in their old age. It was at the outset a joint undertaking and while testatrix did not, as did plaintiff, contribute her entire assets towards the construction and development of the property, she did provide badly needed funds in the beginning. However, when the property was completed and placed in operation she thereafter contributed practically nothing towards saving it from their creditors, although she was better able financially to do so than was plaintiff.

Defendants introduced in evidence, as Exhibit "C", a memorandum under date of September 6, 1937, written by plaintiff, and which he delivered to his wife, in which he renounced any claim that he might have to the property. The memorandum itself, as well as the testimony of plaintiff with reference thereto, shows that it was written at a moment of heartbreaking despondency, following a remark made by testatrix claiming ownership of the hotel property. All parties to this case rely upon this memorandum as supporting their side of the issue here presented. It is the opinion of the court that the memorandum supports plaintiff's contention and is the best evidence in the record in support thereof. The evidence shows that after plaintiff wrote the memorandum he, alone, saved the hotel property from bankruptcy and foreclosure by personal contributions and other financial arrangements. The evidence further discloses that testatrix cooperated with plaintiff in these efforts and accepted all the benefits therefrom.

It is the opinion of the court that upon this entire record plaintiff has shown an equity in this property to exist in himself; that his equity was such as to entitle him to a homestead in the property, which he claimed, secured and possessed on the date of the death of the testatrix, and that said property, being a homestead, title thereto did not pass under the will of testatrix, but descended to plaintiff under the Florida Statutes relating to homesteads as the sole surviving heir of testatrix.

*4. Was a Trust Created in Plaintiff's Favor in the Real and Personal Property Comprising the Trust Estate?*

■ The court has found and held that an estate by the entireties existed in most of the furnishings in the Adobar Hotel. The evidence fails to sustain a trust in plaintiff's favor in any of the real estate owned by testatrix at the time of her death, except the Adobar Hotel property, which the court has held passed to plaintiff under the Constitution and the laws of Florida relating to homesteads. The evidence fails to show a trust created in plaintiff's favor in any of the cash items or other personal property of testatrix included in the trust estate under her will, except the deposit with the Miami Beach First National Bank in the sum of $17,947.20 in the "Adobar" account. In fact, plaintiff claims no interest in any of these items, save and except

the hotel furnishings and the deposit with the Miami Beach First National Bank in the "Adobar" account. As to this cash item, the evidence shows that all deposits in this account came from earnings of the Adobar Hotel and of plaintiff. There is no evidence in the record that testatrix deposited any earnings from her separate estate in this account. The court has heretofore held that the Adobar Hotel passed to plaintiff as a homestead, because of his interest therein upon the death of testatrix. Plaintiff's interest in the hotel and his peronal interest in the "Adobar" account, which contained his personal funds as well as funds of the hotel, created a trust in plaintiff's favor in the "Adobar" account. See Johnson v. Craig, 158 Fla. 254, 28 So.2d 696. The trust so created includes the entire account.

A final judgment will be entered in conformity with this Memorandum Decision.