TERRELL, Justice. .
Plaintiff-appellee filed complaint in the Circuit Court in which she prayed for declaratory decree to determine: (1) her rights individually and as executrix of the estate of her deceased sister Doris Morley Passmore; (2) the' right of Peter Still Passmore* alias Earl Still, alias Earl Patrick Weiss, a minor, hereinafter referred to as appellant, in said estate. At final .hearing the chancellor decreed that said estate never acquired the homestead status; that Mrs. Passmore succeeded to it in fee on the death of her husband and could will it to her sister, the appellee, and that appellant acquired no interest in it whatever at the death of Mrs. Passmore. This appeal is from that decree.
The case stems from these facts: Prior to and in December 1936, Colonel Lyman Passmore and his wife Doris Morley Pass-more of Pensacola, Florida, owned as an estate by the entireties the properties involved in this litigation. On December 22, 1936, by final decree of adoption they became the adoptive parents of appellant who was nine months old. Colonel and Mrs. Passmore began having trouble with appellant when he was three years old. He would steal money from them and toys *298 from the neighbors’ children. If not prevented by force he would slip away from the home at night and remain out till daylight in all kinds of places. '
In November, 1944, Pearl Still Young, paternal grandmother, filed petition in the Probate Court of Mobile, Alabama, to adopt appellant. The consent of Colonel and Mrs. Passmore was made a part of this petition. It was conditionally approved by the Probate Court of Mobile. . The Department of Public Welfare of Alabama made an investigation and found that appellant was placed in the Childrens Home Society of Florida for delinquency during the latter part of 1943, and remained there until September, 1944, when he was turned over to his paternal grandmother and lived with her until May, 1945. in January, 1946, the petition of Mrs. Young to adopt appellant was dismissed at her request.
In July, 1947, appellant was adjudicated to be a delinquent by the Juvenile Court of Escambia County for stealing a bicycle and the same order awarded his care and custody to his grandmother. He was eleven years old at this time. In September, 1947, it appears that appellant was in a juvenile home in Escambia County and was committed to the Florida Industrial School for stealing a motor bike. In 1949, the Juvenile Court of Escambia County entered an order transferring the custody of appellant from Mrs. Pearl Still Young to “Youths Harbor”, a juvenile home. In January, 1950, the Juvenile Court of Es-cambia County ordered appellant removed from “Youths Harbor” and placed in the' custody of Eileen Weiss, Jr., his mother, at Jacksonville, Florida. In the meantime, April 21, 1947, Mrs. Pearl Still Young filed a second petition for adoption in the Circuit Court of Escambia County. Written consent of Colonel and Mrs. Passmore was attached to this petition. Appellant was thirteen years old at this time and signed his consent to the petition. The State Welfare Board made an investigation and recommended temporary custody in Mrs-Pearl Still Young on condition of six months’ delay before final decree of adoption. In May, 1950, the State Welfare Board recommended that the petition for adoption be dismissed because appellant left the grandmother’s home and went to live with his mother in Jacksonville. This petition for adoption was pending at the time Colonel and Mrs. Passmore died and at the time final decree in the instant suit was entered December 14, 1951.
It thus appeárs that for more than two years prior to Colonel Passmore’s death in November, 1950, and at the time of Mrs. Passmore’s death three months later, appellant had not lived in their home. It is not disputed that the property in question was owned by the Passmores as an estate by the entireties and that Mrs. Passmore acquired title in her own right at the time of her husband’s death. It is not disputed that the Passmores twice executed a written consent to the adoption of appellant by Mrs. Pearl Still Young and that appellant signed and swore to his consent for that purpose. It is further shown that when appellant was released from the Florida Industrial School for Boys in 1949, Colonel Passmore refused to take him back and it-was .then agreed that his custody be turned over to his grandmother. At the time of the death of Colonel and Mrs. Passmore appellant had gotten in trouble in Virginia and was in charge of the Juvenile Court. His mother and stepfather had his custody when this took place.
The sole question presented is whether or not Mrs. Passmore took the property as a homestead when her husband died or whether it became her sole property. If it became her sole property as an estate by the entireties she could lawfully will it to appellee.
Appellant contends that notwithstanding the property in question was held as an estate by the entireties by Colonel and Mrs. Passmore and descended to Mrs. Passmore at Colonel Passmore’s death, it never lost its homestead character, and being so, it was not subject to. devise by Mrs. Passmore but descended by operation of law to appellant. Oates v. New York Life Ins. Co., 113 Fla. 678, 152 So. 671; Harkins v. Holt, 124 Fla. 774, 169 So. 481; Clark v. Cox, 80 Fla. 63, 85 So. 173; Nelson v. *299 Hamlin, 89 Fla. 356, 104 So. 589; Osceola Fertilizer Company v. Sauls, 98 Fla. 339, 123 So. 780; O’Neal v. Miller, 143 Fla. 171, 196 So. 478, 129 A.L.R. 295; Larsen v. Austin, Fla., 54 So.2d 63; Martin v. Martin, 112 S.C. 400, 100 S.E. 156.
Much in these cases, if construed in isolation, might he said to support appellant’s contention, but if so construed, the facts of this case present a very different picture. Certainly a wayward child who is “compelled by judicial compulsion to do penance for a time in a foreign correctional institution” cannot be cast “aside like a worn out garment or a broken toy, to be a ward of society,” but there are other considerations besides the emotional aspect that enter into the disposition of this case. We think there is an equitable as well as the homestead aspect that enters into its adjudication, but on either ground we are of the opinion that the chancellor was right.
While it is a fact that the second adoptive petition of the grandmother had not been concluded, it is also a fact that the Passmores had long since renounced any claim of guardianship to appellant; he had not been a member of their household for more than two years at the time of the Colonel’s death when Mrs. Passmore acquired title to the property by entireties. She lived on it for more than three months as her home and at no time during these months was appellant a part of her household nor was he dependent on her for support. The Passmores had recognized no obligation to support appellant for more than two years before their deaths and he had not lived in their home during that time. This Court is committed to the doctrine that the real test of family headship in com templation of the homestead laws must be determined by the facts of each case. De Cottes v. Clarkson, 43 Fla. 1, 29 So. 442; Matthews v. Jeacle, 61 Fla. 686, 55 So. 865; Norman v. Kannon, 133 Fla. 710, 182 So. 903; Moorhead v. Yongue, 134 Fla. 135, 183 So. 804, 118 A.L.R. 1377; Beck v. Wylie, Fla., 60 So.2d 190.
 These cases hold that there will be no homestead in the property after the death of the husband unless the widow becomes the head of the family and continues to occupy the property with her family as a homestead. In other words, they hold that there must be at least two persons who live together in the relation of one family, one of whom must be the head of the family. No such relation existed in this case during Mrs. Passmore’s occupancy of the property, nor had it existed for more than two years. Under such a state of facts, the homestead question being one of fact, there is no predicate for holding that a homestead existed when Mrs. Passmore died.
So much for the legal status of the contentions presented. In equity we think the decree of the chancellor finds equally as strong support. Had it not been for appellant’s delinquency the second adoptive proceedings would have long since been concluded. The record advances no theory as to whom was responsible for appellant’s delinquency, but it is shown that the paternal grandmother repeatedly had him returned to her custody when he was in custody of the Passmores or in institutions where he had been placed for illegal deeds. His father and mother are still living and he has a right of inheritance from them. Plis situation is not materially different from that of the boy in one of the early Florida cases who murdered his father and mother to accelerate his inheritance and then plead with the court to be merciful because he was an orphan.
We think the judgment should be affirmed because (1) appellant had not lived in the Passmore home or depended on them for support for more than two years at the time of Mrs. Passmore’s death. There was consequently no basis for the homestead claim. (2) The Passmores had on two different occasions under oath released all claim to and interest in the custody of appellant. Adoption by his paternal grandmother had been unduly prolonged by her or the conduct of appellant and not by the Passmores. (3) Appellant was maladjusted or antisocial continuously before and after he reached the age of accountability. The potential germ of love and affection had long since been destroyed, so there was no basis of law or morals for an expectancy from the Passmores. (4) The mere techni *300 cal fact that the second adoptive proceeding's had not been concluded would not support an expectancy under the facts of this case.
The decree is therefore affirmed;
SEBRING and MATHEWS, JJ., concur.
DREW, J., concurs specially.
HOBSON, C. J., and THOMAS and ROBERTS, JJ., dissent.