Suit by Louise A. Scoville against Oliver C. Scoville and others to establish plaintiff's rights in and to a certain residence property. From a decree for defendants, plaintiff appeals.
Reversed with directions.
The appellant, the third wife of Albert W. Scoville, deceased, brought suit against the children of her deceased husband by two former marriages, and the executrix under his last will and testament, to establish her rights in and to a certain residence property conveyed to her by her deceased husband as a wedding gift at the time of their marriage. In the suit the defendants contended that the deed never passed title to the appellant as against the defendants, for the reason that on the date of the conveyance the property was homestead; the husband being at the time of the conveyance the head of a family consisting of himself and a son, Oliver, by his second wife, Mary Silvers Barker Scoville, who made his home with his father, was dependent upon him for support, was under his father's domination and control, and as to whom the father owed the legal obligation of maintenance, support, and care.
At final hearing the chancellor found that at the time of the death of the second wife, Albert W. Scoville was the head of a family within the intendments of Article X of the Constitution of Florida and continued thereafter until his own demise to be the head of a family consisting of himself and the son Oliver, and that inasmuch as the appellant had failed to prove that the conveyance of the property to her was for a good and sufficient valuable consideration, the deed was ineffective as a conveyance of the legal title to the homestead, as against the vested interest of Oliver, the child and member of the deceased husband's family.
The appellant has appealed from this decree, the question on the appeal being whether the decree entered by the chancellor was supported by the weight of the evidence and the law applicable to the situation.
As to the evidence, the record shows that the property involved in this controversy was acquired by Albert W. Scoville by warranty deed in 1922. Thereafter he and his second wife, Mary Silvers Barker Scoville, occupied the property as a homestead until she died on February 5, 1935. During the lifetime of Mary Silvers Barker Scoville, certain children of Albert W. Scoville, including Oliver, had lived in the family home as members of a family, but, according to our view of the evidence, had reached their majority, had left the home, and had established homes and families for themselves elsewhere, prior to the death of the second wife.
Some effort was made by the defendants below to show that after the death of the second wife, Mary Silvers Barker Scoville, but before the conveyance of the property to the appellant, the son Oliver S. Scoville acquired a permanent residence with his father as a member of the family and thereby cast upon his father, as a matter of law, "an established and continuing personal authority, responsibility and obligation" for his welfare. In our opinion, the showing on the issue fell far short of *Page 842 
that required by the decisions with respect to establishing a family relationship within the purview of the homestead provision of the Constitution.
As heretofore stated, Oliver and the other sons of the decedent had moved away from the home and had established homes and families for themselves elsewhere, prior to the death of Mary Silvers Barker Scoville and prior to the conveyance of the property by Albert W. Scoville to the appellant. Oliver lived with his wife in a home in Hartford, Connecticut, where his wife took in roomers and he assisted her in the business. The great weight of the evidence points to the fact that Oliver considered Hartford his legal residence. Though there is testimony to the effect that Oliver visited his father a few weeks of each year, both before and after the death of the second wife, and that during such visits the father gave him food, lodging, spending money and certain small items of wearing apparel, we do not think that by reason of these occasional visits and the gifts from father to son the father became the "head of a family residing in the State," consisting of himself and son Oliver, or that the property retained its homestead status after the death of the second wife, within the purview of Article X of the Constitution. See Herrin v. Brown, 44 Fla. 782, 33 So. 522, 103 Am.St.Rep. 182; Davis v. Miami Beach Bank Trust Co., 99 Fla. 1282, 128 So. 817; Jordan v. Jordan, 100 Fla. 1586, 132 So. 466.
But even had the position of Albert W. Scoville as the head of a family consisting of himself and his son Oliver been established by the evidence, we are of the view that it would not have affected the conclusion which should ultimately be reached on the law applicable to such a situation.
The only express restriction placed by Florida law upon the voluntary alienation of homestead property by deed, even in those cases where the homesteader has children or other dependants, are those contained in sections 1 and 4 of Article X of the Constitution, as follows: "* * * the (homestead) real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. * * *" Sec. 1, Art. X. "Nothing in this Article shall be construed to prevent the holder of a homestead from alienating his or her homestead * * * by deed or mortgage duly executed by himself or herself, and by husband and wife, if such relation exists * * *." Sec. 4, Art. X.
These sections place but one limitation on the alienation of the homestead property by deed while its owner is alive, namely, that if the homestead owner has a spouse, the joint consent of both and due execution of the deed by both, are absolutely necessary. The fact that the homesteader may have children or other dependents in being at the time of the execution of the deed is wholly immaterial in this connection. For exhaustive treatment of the general subject see "Our Legal Chameleon, the Florida Homestead Exemption," by Crosby and Miller (1949) Vol. II, No. 1 and 2, University of Florida Law Review.
Aside from these limitations, a deed which has as its object the conveyance of homestead property to a grantee other than the living spouse should be treated as any other inter vivos transfer of real property; and where the bona fides of its execution is called in question, the burden will be upon the party making the assault to establish the facts necessary to void or set aside the instrument.
The deed from Albert W. Scoville to the appellant was duly executed on September 21, 1935, while the grantor was a widower. It was delivered to the appellant on the same day, a few hours prior to her marriage. A few days after the marriage the grantor caused the deed to be duly recorded in the public records of Volusia County and then redelivered it to the appellant. No fraud or other ulterior motive is shown to have been involved in the procurement of the deed. The grantor was perfectly competent at the time of its execution. The deed recited a consideration and was under seal and hence imported a lawful consideration. Horn v. Gartman, 1 Fla. 63; Wise v. Wise, 134 Fla. 553, 184 So. 91. According to the weight of the evidence, the deed to the property was delivered by the grantor to the appellant as a wedding gift; the real consideration for *Page 843 
the conveyance being the agreement of the appellant to marry the grantor. This was a sufficient consideration for the deed, even if it be assumed that there was no other, for marriage is deemed in law a consideration of the highest value for such a conveyance and as effective as if the grantee had paid full value in money. See Rutland v. Norris, 154 Fla. 894, 19 So.2d 418, citing Thompson on Real Property, Perm. Ed., Vol. 6, Sec. 3216.
The defendants in the court below having failed to establish their right to a decree, either on the facts or the law, a decree should not have been entered in their favor. It follows, therefore, that the decree appealed from should be reversed with directions that a decree be entered in favor of the appellant.
It is so ordered.
ADAMS, C.J., CHAPMAN, J., and BROWN, Associate Justice, concur.