**HAY et al. v. WANNER.**

No. 14134.

United States Court of Appeals
Fifth Circuit.

May 15, 1953.

Paul Game and Charles H. Ross, Tampa, Fla., for appellants.

William C. Grimes and E. G. Grimes, Bradenton, Fla., for appellees.

Before HUTCHESON, Chief Judge, and STRUM and RIVES, Circuit Judges.

STRUM, Circuit Judge.

The purpose of this suit is to set aside conveyances of Florida homestead lands, alleged to be in violation of plaintiffs' rights, as heirs, under Article 10 of the Florida Constitution.

Appellants, plaintiffs below, are adult children of W. P. Hay, now deceased, and his first wife, who predeceased him. On July 12, 1938, W. P. Hay married Mary E. H. Bayly (now Hay), one of the defendants below. They resided on the lands in question until the death of W. P. Hay in January, 1947. Until the conveyances hereinafter mentioned, title to the lands stood in W. P. Hay individually.

Prior to their marriage, W. P. Hay and his second wife, Mary E. H. Bayly each owned a home. By an oral antenuptial agreement between them, they agreed to sell the Mary Bayly home and live in the W. P. Hay home, placing the Hay home, and other properties owned by them individually, in "joint ownership." Accordingly, prior to the marriage, the Bayly home was sold, and a substantial portion of the purchase price used to repair the Hay home, the property here in question. About four months after the marriage, Mrs. Hay also terminated her individual bank account, and opened a joint account with her husband, in which she thereafter deposited other funds received by her from the sale of her home, from the sale of furniture, and from other sources.

On November 2, 1938, about four months after the marriage, W. P. Hay, joined by his wife Mary E. H. B. Hay, conveyed four of the homestead lots here in question (and other lots) to E. R. Underhill, who on the same day re-conveyed the same to "W. P. Hay and Mary E. H. B. Hay, his wife," thus creating an estate by the entireties, under which, by the law of Florida, the surviving spouse inherits the whole estate, to the exclusion of the children. Denham v. Sexton, Fla., 48 So.2d 416. Similarly, on February 3, 1941, about two and a half years after the marriage, W. P. Hay, joined by his said wife, conveyed two other lots, one of which is here in question as a part of the homestead, to John F. Carney, who on the same day re-conveyed the same to the Hays by the entireties. These are the conveyances here under attack.

Plaintiffs contend that said conveyances are in violation of their rights as heirs under Article 10 of the Florida Constitution; that upon the death of their father title to the homestead lands descended to them, subject only to a life estate in the second wife; and that, being in violation of Art. 10 of the Florida Constitution, the conveyances should be cancelled as clouds on their title.

Defendants below contend, and the trial court held, that homestead lands in Florida may be alienated with the joint consent of husband and wife, and where, as here, it is in good faith and upon adequate consideration, a conveyance of the homestead through a third party to the husband and wife by the entireties is good as against the children.

Article 10, section 1, of the Florida Constitution, creates in favor of the head of a family residing in that state a homestead in real and personal property which shall be exempt from the claims of creditors, and further provides that the real estate shall

not be alienable without the joint consent of husband and wife, when that relationship exists. By Section 2 of Article 10, it is provided that the "exemption" shall inure to the widow and heirs of the party entitled to it; and by Section 4 it is provided that nothing in Article 10 shall be construed to prevent the holder of a homestead from alienating it by deed or mortgage duly executed by husband and wife, if such relationship exists.

Section 731.05, Fla.Stat.1951, F.S.A., provides, inter alia, that when the head of a family owning a homestead dies and leaves a widow or lineal descendants or both surviving him, the homestead "shall not be the subject of devise, but shall descend as otherwise provided in this law for the descent of homesteads."

Section 731.27, Fla.Stat.1951, F.S.A., a part of the same legislative Act, provides that "The homestead shall descend as other property; provided, however, that if the decedent be survived by a widow and lineal descendants, the widow shall take a life estate in the homestead, with vested remainder to the lineal descendants in being at the time of the death of the decedent."

In interpreting Article 10 of the Constitution, the Supreme Court of Florida has displayed marked solicitude for the interests of children in homestead property, particularly against attempts to *gratuitously* cut off those rights in favor of a wife. In Byrd v. Byrd, 73 Fla. 322, 74 So. 313, and Thomas v. Craft, 55 Fla. 842, 46 So. 594, the Supreme Court of Florida held that where there is a child or children of the husband who is the head of a family, homestead real estate can not be conveyed by the husband directly to the wife, and that a deed purporting to do so is void. The reason assigned is that under Art. 10, supra, homestead exemptions "inure" to the heirs as well as to the widow, and that this interest can be alienated only as prescribed in the Constitution. It does not clearly appear in the two cases last cited whether or not there was a consideration for the conveyance, but the implications are that there was not. See also a later case, Church v. Lee, 102 Fla. 478, 136 So. 242, in which husband and wife joined in a conveyance directly to the wife, and it was held that the complaint, brought to set it aside, was not defective merely because it did not allege that the conveyance was "voluntary" or "without consideration." Compare Semple v. Semple, 82 Fla. 138, 89 So. 638.

In other Florida cases, including Norton v. Baya, 88 Fla. 1, 102 So. 361; Jackson v. Jackson, 90 Fla. 563, 107 So. 255; Norman v. Kannon, 133 Fla. 710, 182 So. 903; Florida Nat. Bank of Jacksonville v. Winn, 158 Fla. 750, 30 So.2d 298; McEwen v. Larson, 136 Fla. 1, 185 So. 866; Bess v. Anderson, 102 Fla. 1127, 136 So. 898; and Hart v. Gulf Fertilizer Co., 91 Fla. 991, 108 So. 886, the husband and wife conveyed to a third party, who immediately re-conveyed either to the wife alone, or to the husband and wife by the entireties. These too were held to be in violation of Art. 10 and void. The reason assigned was that if the conveyances were given effect they "would operate to transfer the legal title to the homestead from the husband to the wife, stripped of its homestead status or character, thereby converting her interest therein to absolute ownership, and divesting his children, who are his prospective heirs, of the interest which under the Constitution inures to them." In these cases, however, the conveyances were gratuitous and *without consideration,* their apparent purpose being to thwart the children's interest in the homestead.

We have found no Florida case rejecting the conveyance of a homestead either directly to the wife, or through an intermediary to the husband and wife by the entireties, where there was an adequate consideration therefor, and the conveyance was bona fide and not merely a device to circumvent the children's homestead rights. It is conceded that homestead realty may be conveyed by the husband and wife to a third party for an adequate consideration, thus terminating the children's interests therein, and that the parents may dispose of the proceeds as they see fit. It is not necessary that the children join in such a conveyance. It would be anomalous to hold that such a conveyance to a stranger, upon good consideration, is valid, but that a conveyance to the husband and wife by the entire-

ties, upon a like consideration, is void. We find no reason in Art. 10 of the Florida Constitution for drawing such a distinction.

In view of the fact that the only specific restriction upon alienation found in Art. 10 is that such property is not alienable without the joint consent of husband and wife, when that relation exists, see Scoville v. Scoville, Fla., 40 So.2d 840, headnote 2, and Denham v. Sexton, Fla., 48 So. 2d 416, 418, and in view of the fact that husband and wife may convey to a stranger for an adequate consideration and thus terminate the children's interests, we see no good reason why the wife can not be brought in with the husband as a tenant by the entireties in the homestead property when she pays therefor *an adequate consideration from her separate estate,* and the transaction is in all other respects bona fide and not merely an artifice to defeat the children. We know of no Florida case which condemns such a conveyance.

On the contrary, in Daniels v. Mercer, 105 Fla. 362, 141 So. 189, the Supreme Court of Florida sustained the alienation of a homestead to some of the homestead owner's children, to the exclusion of others, when the conveyance was made in good faith, for an appropriate consideration, and for no illegal purpose, although the deed there involved recited only a formal consideration of " 'one dollar and other valuable considerations ' ".

In Norman v. Kannon, 133 Fla. 710, 182 So. 903, 905, the same court reiterated the doctrine above referred to as to homestead conveyances made without consideration, but went on to say in headnote 5: "If a permissible conveyance * * * for a proper consideration is duly made, the consideration takes the place of the exempted property and the Constitution may not thereby be violated."

And in Jackson v. Jackson, 90 Fla. 563, 107 So. 255, 257, in which *gratuitous* conveyance of the homestead by husband to wife was held void, the court carefully pointed out in the last paragraph: "This is not a case of a conveyance of the homestead real estate to the owner's wife for an appropriate consideration that might be beneficial to the children of the owner as well as to the widow at his death." This case clearly leaves open the question whether a conveyance to the wife, upon an adequate consideration, would be valid.

In Florida Nat. Bank of Jacksonville v. Winn, Fla., 30 So.2d 298, 299, a conveyance of this character was rejected in a per curiam order by a majority of the court, on authority of Norton v. Baya and other cases cited above, in all of which the conveyance in question was without consideration. But Justices Terrell and Chapman, dissenting, thought there was ample consideration for the conveyance in the Winn case, and that it should be sustained for that reason. In the dissenting opinion by Justice Terrell it was first pointed out that the Supreme Court of Florida is committed to the doctrine that homestead lands can not be disposed of through a conduit, or otherwise, *without consideration.* He then said: "In my view there have been many unwarranted inferences drawn from these [above cited] and other decisions affecting the homestead. * * * There is not a word in the [Florida] Constitution to warrant the suggestion that an adult child may thwart the desire of a parent in the matter of disposing of the homestead by deed."

There is no evidence of fraud or overreaching in the transactions here involved, and the conveyances were upon adequate consideration. One consideration was the pre-nuptial promise of Mary E. H. Bayly to marry W. P. Hay, the homestead owner. In Scoville v. Scoville, Fla., 40 So.2d 840, 843, the Supreme Court of Florida said of a promise of marriage as a consideration for a deed: "This was a sufficient consideration for the deed, even if it be assumed that there was no other, for marriage is deemed in law a consideration of the highest value for such a conveyance, and as effective as if the grantee had paid full value in money."

But there was a more tangible consideration here. Pursuant to the pre-nuptial agreement, and prior to her marriage to Hay, Mary E. H. Bayly sold her home, which was valued at about $10,000, and applied approximately $1500 of the proceeds

to the repair and improvement of the Hay home, which, before repair, was valued at about $2500. This consideration *from an outside source* inured not only to the benefit of W. P. Hay, but also to the homestead itself and to the inchoate interest of the children therein. In addition, Mary E. H. Bayly, pursuant to her agreement, placed all her separate funds in a joint bank account to which her husband had access. The oral pre-nuptial agreement was fully executed, which takes it out of the statute of frauds. McDowell v. Ritter, 153 Fla. 50, 13 So.2d 612; 49 Am.Jur. 857 (552). Every case must stand on its own bottom as to the adequacy of the consideration, but here, in addition to her promise of marriage the wife paid a definite and adequate money consideration from her own separate funds for what she got, just as a third party would have done, and no ulterior purposes or motives are shown. We see nothing in Art. 10, supra, to defeat the conveyances in these circumstances. We agree with the district judge that they are valid and operative.

At the time this case was tried, W. P. Hay was dead, and Mary E. H. B. Hay had become mentally incompetent. To establish the pre-nuptial agreement, and to show how it was carried out and the consideration paid, defendants below produced a wholly disinterested witness who was a long time friend and confidant of both W. P. Hay and Mary E. H. B. Hay, to whom Mrs. Bayly had gone for advice prior to her marriage to Hay, and to whom both of the Hays had, in the presence of each other, confided the details of their pre-nuptial agreement, and who had personal knowledge of how the agreement was carried out by the parties. Appellants contend that this testimony as to what the parties said to him was hearsay, and should have been excluded.

The statements made by the Hays to the witness were not self serving declarations. On the contrary, they were admissions against interest, and as such are admissible in evidence upon the testimony of the person to whom they were made, against a person claiming under or in succession to the deceased declarant, which is plaintiffs' position here. Jackson v. Parker,

153 Fla. 622, 15 So.2d 451, headnote 12; 20 Am.Jur., p. 521, secs. 609, 610.

Finding no error, the judgment appealed from is

Affirmed.