ANNA MARY BOWDEN JOHNS, *et al., Appellants,* v. RICHARD FLEMING BOWDEN, R. F. BOWDEN AS GUARDIAN *ad litem* FOR JAMES URIAH BOWDEN, A MINOR, AND V. W. SHIELDS, TRUSTEE, *Appellees.*

Opinion Filed June 25, 1914.

1. An unmarried man who is "the head of a family residing in this State" to whom homestead exemptions have accrued, may alienate his "homestead. so exempted by deed or mortgage duly executed by himself;" if he "be without children," he may dispose of his "homestead by will in a manner provided by law."

2. A married man may alienate his "homestead so exempted by deed or mortgage duly executed by himself" *and his wife*; but a married man who leaves a widow or a child surviving him cannot lawfully make a testamentary disposition of his homestead.

3. While "the exemptions" impressed by law upon "a homestead," "shall inure to the widow and *heirs* of the party entitled to such exemptions," the homestead property may be alienated by deed or mortgage,. and may be disposed of by last will and testament, if there be no widow or *child* of "the holder" of the homestead.

4. The status of a homestead which the Constitution impresses upon property under certain circumstances, does not change the nature of the estate in the property "owned by the head of a family residing in this State," but merely exempts such property from certain liabilities to which it would otherwise be subject, and limits the owner's inherent power of alienation, by making such property "exempt from forced sale under process of any court," and by making the real estate "inalienable without the joint consent of husband and wife, when that relation exists."

5. The homestead exemptions impressed upon property "owned by the head of a family residing in this State," "inure to the

widow and heirs of the party entitled to such exemption," along with the respective rights in the property which are cast *by law* upon the widow and heirs of the head of the family who was at his death entitled to the exemption benefits.

6. To constitute a "head of a family" there must be at least two persons who live together in the relation of one family, and one of them must be "the head" of that "family." When the natural relation of husband and wife or parent and child, or that of being *in' loco parentis*, does not exist, the relation should be one in which an established and continuing personal authority, responsibility and obligation actually rests upon one as "the head of a family" for the welfare of the others who in law should or in fact do recognize and observe a family relation to the one as "the head of a family."

7. That which the law forbids to be done directly cannot lawfully be done by indirection.

8. If an attempted conveyeance of homestead real estate is in legal and practical effect and operation a will, it may not be effective when the owner of the homestead leaves a wife or child.

9. Though the allegations of a bill of complaint be abstract and general and largely in the nature of asserted conclusions, yet if under the allegations a case entitling the complainant to relief as prayed can be made by appropriate and sufficient evidence, a general demurrer to the bill of complaint should be overruled.

Writ of error to Circuit Court for Duval County; George Couper Gibbs, Judge.

Order reversed.

*D. C. Campbell,* for Appellants;

*B. B. Shields, J. L. Doggett* and *E. J. L'Engle,* for Appellees.

WHITFIELD, J.—The bill of complaint herein brought against Richard Fleming Bowden, James Uriah Bowden, a minor, and V. W. Shields, trustee, alleges in substance that the complainants and the defendant Richard Fleming Bowden are the sole surviving heirs at law of Uriah Bowden, deceased; That said Uriah Bowden and his wife, Sarah Ann Hogan Bowden, continuously and for a long period of time, prior to her death, lived, resided upon, made their home, residence and place of permanent abode, in and upon the east seventy-five feet and two inches, more or less, of the south eighty-five feet, more or less, of Lot Three (3) in Block Fifty-four (54) in the city of Jacksonville, County of Duval and State of Florida, and said property and premises was their homestead, at the time of her death, and could not have been alienated without their joint consent; that at the time of the death of the said Sarah Ann Hogan Bowden about July 28th, 1902, the said complainants and said respondent, Richard Fleming Bowden, and her said husband, Uriah Bowden, being her sole surviving heirs at law, then and there became heirs to and inherited all the right, title and interest, of said Sarah Ann Hogan Bowden, in and to said homestead, and, thereafter, said Uriah Bowden could not have lawfully alienated said homestead without the joint consent of said complainants and said respondent, Richard Fleming Bowden; that after the death of the said Sarah Ann Hogan Bowden, aforesaid, the said Uriah Bowden continued to live, reside, make his only home and place of permanent abode, in and upon said homestead continuously, until the time of said death aforesaid, and died therein and thereon; that said Uriah Bowden, prior to his death

aforesaid, and while actually living, residing, making his home and place of permanent abode, in and upon said homestead, and while the same was the homestead aforesaid, made his Will, dated July 13th, A. D. 1903, and Codicil, thereto, dated April 15th, A. D. 1908; that said codicil of the testator contains the following: "I have arranged to have the land described as Lot three (3) in Block fifty-four (54) in said city, county and State, according to the old numbers of said city of Jacksonville, conveyed to my son, Richard Fleming Bowden, for his use and benefit during his natural life, with the remainder upon his death to my grandson, the son of said Richard Fleming Bowden, James Uriah Bowden, in fee simple; and if for any reason said last mentioned lot of land should not be conveyed, I devise the same with all the appurtenances thereof to my son, Richard Fleming Bowden, for his own use and benefit, for and during his natural life, and I devise the same upon his death to my grandson, James Uriah Bowden, his heirs and assigns, in fee simple, and if said Richard Fleming Bowden should die before me and said James Uriah Bowden should survive me, I devise said last mentioned lot of land and appurtenances to said James Uriah Bowden, his heirs and assigns, in fee simple. If said Richard Fleming Bowden should be living at the time of my death but said James Uriah Bowden should not be then living, I devise said last mentioned lot of land and appurtenances to said Richard Fleming Bowden for his lifetime, as aforesaid, and upon his death to such children or child of said Richard Fleming Bowden as shall then be living, in fee simple. If said Richard Fleming Bowden and said James Uriah Bowden both die before me, I devise such last mentioned lot of land and appurtenances to such children or child of said Richard Fleming Bowden as shall then be living;" that

said Uriah Bowden, while still living, residing, making his home and place of permanent abode, in and upon said homestead, and while the same was the homestead as aforesaid, about the 15th day of April, A. D. 1908, and the same date as his last Codicil to Will aforesaid, made, to V. W. Shields, as trustee, the following:

"TRUST DEED

This Indenture, made this 15th day of April, in the year of our Lord nineteen hundred and eight, between Uriah Bowden, widower, of Duval County, Florida, of the first part, and V. W. Shields, now rector of St. Johns Church, of said State and County, as trustee, as herein-after provided of the second part.

Witnesseth, That the said party of the first part, for and in consideration of the sum of One Dollar, lawful money of the United States of America, to him in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has bargained, sold and conveyed, and by these presents does bargain, sell and convey unto the said party of the second part and his heirs and assigns forever, all the following piece, parcel or tract of land, situated, lying and being in the city of Jacksonville, County of Duval and State of Florida, described as follows:

Lot Three (3) in Block Fifty-four (54) in said city, county and State, according to the old numbers of said city of Jacksonville,

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise pertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. And also all the estate, right, title, property, possession, claim and demand whatsoever, as well in law as in equity, of

the said party of the first part, of, in and to the same, and every part and parcel thereof, with the appurtenances.

To have and to hold the above described premises, with the appurtenances, unto the said party of the second part, his heirs and assigns, to his and their own proper use, benefit and behoof forever, in trust, to permit the said party of the first part to occupy and use the said land and appurtenances and to collect, receive and appropriate to his own use and benefit, the rents, issues and profits thereof, and of every part thereof, for and during his natural life, or until the same shall be conveyed as hereinafter provided, and to convey said land and appurtenances, or any part or parts thereof, to such person or persons, in fee simple or otherwise, as said party of the first part may in writing direct, such conveyance or conveyances to be made in the lifetime of said party of the first part, and if said land and appurtenances, or any part thereof, or any estate therein or any part thereof, shall not be so conveyed but shall remain in said trustee upon the death of the said party of the first part, Richard Fleming Bowden, for his own use and benefit for and during his natural life, and in remainder upon his death to the grand-child of said party of the first part, James Uriah Bowden, son of said Richard Fleming Bowden, the said James Uriah Bowden, his heirs and assigns in fee simple; or if said Richard Fleming Bowden shall not survive said party of the first part, to convey the same in fee simple, upon the death of said party of the first part, to said James Uriah Bowden in fee simple; and if said Richard Fleming Bowden and James Uriah Bowden both die before the party of the first part, to convey the same to such children or child of said Richard Fleming Bowden as shall then be living. If said Richard Fleming Bowden should be living at the time of the death of said party of

the first part and said' James Uriah Bowden should not be then living, to convey said last mentioned Lot of land and appurtenances to said Richard Fleming Bowden for his lifetime, as aforesaid, with the remainder upon his death to such children or child of said Richard Fleming Bowden as shall then be living, in fee simple."

That, notwithstanding the preceding purported deed, for said homestead, from said Uriah Bowden to said V. W. Shields, as trustee, the said Uriah Bowden, continuously and uninterruptedly, lived, resided, made his home and place of permanent abode, in and upon said homestead thereafter, just as he had previously done, and until his death aforesaid, and died therein and thereon; that after the death of said Uriah Bowden, in and upon said homestead as aforesaid, and about the 31st day of March, A. D. 1909, the said V. W. Shields, trustee, made to said respondent, Richard Fleming Bowden, a deed of conveyance without warranty under the trust; that said complainants and said respondent, Richard Fleming Bowden, and said Uriah Bowden, having inherited all the right, title and interest, of said Sarah Ann Hogan Bowden, in and to said homestead as aforesaid, the said Uriah Bowden could not have lawfully alienated said homestead without the joint consent of said complainants and said respondent, Richard Fleming Bowden, as aforesaid; and the said purported deed of said Uriah Bowden to said V. W. Shields, trustee, for said homestead, was and is absolutely void, as against the right, title and interest of said complainants; that the aforesaid continued and uninterrupted and actual occupation and possession of said homestead by said Uriah Bowden, after his said purported deed to said V. W. Shields, trustee as aforesaid, rendered said deed absolutely void as against said complainants; that said purported deed of said Uriah Bowden to said V. W.

Shields, trustee, for said homestead, was made for the purpose and with the intention of conveying and giving said homestead to said respondent, Richard Fleming Bowden, during his lifetime, and, at his death, to his son, the respondent, James Uriah Bowden, and to the exclusion of said complainants; and said purported deed is absolutely void as against said complainants; that said Uriah Bowden could not have lawfully devised said homestead, by his last Will and said purported deed of said Uriah Bowdeen to said V. W. Shields, trustee, for said homestead, according to the terms conditions, requirements and covenants, thereof and therein, was to become effective only after the death of said Uriah Bowden, and was and is tantamount to a devise of said homestead, by the last Will of said Uriah Bowden, and is absolutely void as against said complainants; that under and by virtue of paragraph 3 of the aforesaid last Codicil to and of the Will of said Uriah Bowden, and having been made on the same day on which said purported deed to said V. W. Shields, trustee, for said homestead, was made as aforesaid, makes said paragraph of said Codicil to said Will as to said homestead, and said purported deed aforesaid, by reference thereto, a part thereof, and was an effort of said Uriah Bowden to devise said homestead to said Richard Fleming Bowden, during his natural life, and to his (Richard Fleming Bowden's) said son, James Uriah Bowden, at his death, and as therein otherwise provided; and by the last Will of said Uriah Bowden, and contrary to law, said paragraph of said Codicil of said Will, as to said homestead and said deed, are both absolutely void as against said complainants; that said purported deed of said Uriah Bowden to said V. W. Shields, trustee, for said homestead, is absolutely void as against said complain-

ants; and said purported deed of said V. W. Shields, trut-
tee, to said respondent and his son, respondent James
Uriah Bowden, for said homestead, is also absolutely void
as against said complainants; that said paragraph 3, of
said last Codicil to and of the Will of said Uriah Bowden,
being void as to said homestead and as against said com-
plainants, and as aforesaid, and said purported deed of
said Uriah Bowden to said V. W. Shields, trustee, for said
homestead, being void as aforesaid, and said purported
deed of said V. W. Shields, trustee, to said Richard Flem-
ing Bowden and said James Uriah Bowden, claiming said
homestead only under and by virtue of said paragraph 3,
of said last Codicil and said purported deeds aforesaid,
failed to acquire the right, title and interest, of said com-
plainants in and to said homestead; and said complain-
ants are entitled to a partition of said homestead.

The prayer is that the deeds from Bowden to the trus-
tee, and from the trustee to Richard Fleming Bowden be
adjudged to be void, and that partition be decreed.

A demurrer of V. W. Shields on the ground that he was
not a proper party, was properly sustained. The answer
of the guardian *ad litem* of the minor defendant merely
submitted the rights and interests of the minor to the
protection of the court. In an answer of the defendant
Richard Fleming Bowden the following demurrer was in-
corporated: (a) that said bill is without equity; (b) that
the complainants have not in and by their said bill of com-
plaint made or stated such a case as entitles them to the
relief prayed, or any other relief in a court of equity; (c)
that said bill of complaint is vague, uncertain, indefinite
and inconsistent. Replications were filed, exceptions
taken to the answer were overruled, testimony was taken,
and on final hearing the following decree was rendered:
"This cause came on for final hearing on the bill of com-

plaint, the answers and demurrers of the defendants, the complainants' replications to said answers, and the testimony taken and reported herein by the Special Master;

And said cause having been fully argued by counsel, and the court, finding that the demurrer in the answer to said bill of complaint is well taken and that said bill of complaint is without equity, and that therefore the com plainants are not entitled to the relief there and thereby prayed;

Thereupon, upon consideration thereof, *It is Ordered, Adjudged and Decreed* that the bill of complaint herein be and the same is hereby dismissed at the cost of complainants."

The complainants appealed and assign the following errors:

"1. The lower court erred in and by its order and decree sustaining demurrer of V. W. Shields to the bill of complaint.

2. The lower court erred in and by its order and decree overruling the exceptions of appellants to the answer of Richard Fleming Bowden.

3. The lower court erred in and by its final decree dismissing bill of complaint, dated July 5th, A. D. 1913.

4. The lower court erred in sustaining the demurrer in the answer to the bill of complaint.

5. The lower court erred in sustaining the demurrer in the answer to the bill of complaint, without leave or permission of appellants to amend bill of complaint.

6. The lower court erred in dismissing bill of complaint at the cost of appellants.

7. The lower court erred in failing to order and decree the relief prayed in the bill of complaint.

8.   The lower court erred in denying complainants any relief whatever, and dismissing the bill of complaint."

Article X of the Constitution provides:

"Section 1.   A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists.   But no property shall be exempt from sale for taxes or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same.   The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; and no judgment or decree or execution shall be a lien upon exempted property except as provided in this article.

Section 2.   The exemptions provided for in section one shall inure to the widow and heirs of the party entitled to such exemption, and shall apply to all debts, except as specified in said section.

Section 3.   The exemptions provided for in the Constitution of this State adopted in 1868 shall apply to all debts contracted and judgments rendered since the adoption thereof and prior to the adoption of this Constitution.

Section 4.   Nothing in this article shall be construed to prevent the holder of a homestead from alienating his or her homestead so exempted by deed or mortgage duly ex-

ecuted by himself or herself, and by husband and wife, if such relation exists; nor if the holder be without children to prevent him or her from disposing of his or her homestead by will in a manner prescribed by law.

Section 5. No homestead provided for in section one shall be reduced in area on account of its being subsequently included within the limits of an incorporated city or town, without the consent of the owner.

Section 6. The Legislature shall enact such laws as may be necessary to enforce the provisions of this article."

Section 2297 of the General Statutes of 1906 provides as follows:

"Whenever a person who is the head of a family residing in this State, and having his homestead herein, shall die and leave a widow surviving him, but no children, the homestead shall descend to the widow and shall not be the subject of devise by last will and testament; but if there be any child or children surviving him, then the widow shall be entitled to dower or a child's part in such homestead, as she may elect to take a child's part, in other cases, and should she not elect to take a child's part, she shall be confined to dower in such homestead property; but she may take under the will, such other property as may be given to her thereby or dower therein as she may elect." See Thomas v. Williamson, 51 Fla. 332, 40 South. Rep. 831; Saxon v. Rawls, 51 Fla. 555, 41 South. Rep. 594.

While under the constitution "the exemptions" of "a homestead" that accrue when the property is "owned by the head of a family residing in this State," "shall inure to the widow and heirs of the party entitled to such exemption," the constitution itself expressly provides that it shall not "be construed to prevent the holder of a homestead from alienating his or her homestead so exempted

by deed or mortgage duly executed by himself or herself, and by husband and wife, if such relation exists; nor if the holder be without children to prevent him or her from disposing of his or her homestead by will in a manner prescribed by law." But the statute provides that "whenever a person who is the head of a family residing in this State, and having his homestead herein, shall die and leave a widow surviving him, but no children, the homestead shall descend to the widow and shall not be the subject of devise by last will and testament; but if there be any child or children surviving him, then the widow shall be entitled to dower or a child's part in such homestead," &c. Under these provisions an unmarried man who is "the head of a family residing in this State" to whom homestead exemptions have accrued, may alienate his "homestead so exempted by deed or mortgage duly executed by himself;" and if he "be without children," he may dispose of his "homestead by will in a manner provided by law." A married man may alienate his "homestead so exempted by deed or mortgage duly executed by himself" *and his wife;* but a married man who leaves a widow or a child surviving him cannot lawfully make a testamentary disposition of his homestead. Thus while "the exemptions" impressed by law upon "a homestead," "shall inure to the widow and *heirs* of the party entitled to such exemptions," the homestead property may be alienated by deed or mortgage, and may be disposed of by last will and testament, if there be no widow or *child* of "the holder" of the homestead.

In order to constitute "a homestead" in property under the Florida constitution, the property must be "owned by the head of a family residing in this State." The status of a homestead which the constitution impresses upon property under certain circumstances, does not change

the nature of the estate in the property "owned by the head of a family residing in this State," but merely exempts such property from certain liabilities to which it would otherwise be subject, and limits the owner's inherent power of alienation, by making such property "exempt from forced sale under process of any court," and by making the real estate "inalienable without the joint consent of the husband and wife, when that relation exists." The homestead exemptions impressed upon property "owned by the head of a family residing in this State," "inure to the widow and heirs of the party entitled to such exemption," along with the respective rights in the property which are cast *by law* upon the widow and heirs of the head of the family who was at his death entitled to the exemption benefits. In order for the exemptions to apply, the property must be of the kinds and within the extents specified, and it must be "owned by the head of a family residing in this State." To constitute a "head of a family" there must be at least two persons who live together in the relation of one family, and one of them must be "the head" of that "family." When the natural relation of husband and wife or parent and child, or that of being *in loco parentis,* does not exist, the relation should be one in which an established and continuing personal authority, responsibility and obligation actually rests upon one as "the head of a family" for the welfare of the others who in law should or in fact do recognize and observe a family relation to the one as "the head of a family."

Where the relation of husband and wife does not exist between the owner of property to which the homestead exemptions are attached and another living person, the constitution imposes no restrictions upon, but expressly recognizes, the power of the owner to alienate the property by a deed or mortgage executed by the owner alone,

to take effect in the grantor's lifetime as a vested, irre-
vocable right. Under the constitution and statute, the
property upon which the law imposes the homestead ex-
emptions and limitations is not subject to testamentary
disposition when the testator is the "holder" of the home-
stead and leaves a wife or a child. That which the law
forbids to be done directly cannot lawfully be done by
indirection. If an attempted conveyance of homestead
real estate is in legal and practical effect and operation a
will, it may not be effective when the owner of the home
stead leaves a wife or child.

The allegations of the bill of complaint with reference
to the ownership of the land and to the status to Uriah
Bowden as the head of a family at and just before his
death, are rather abstract and general, being more in the
nature of asserted conclusions than of definite statements
of specific facts showing Uriah Bowden to have been at
his death the owner of the property in controversy and
his habitation thereof as "the head of a family," so that
the law would have impressed upon the property the ex-
emptions and limitations that constitute the homestead
rights and privileges. Yet it cannot be said on the gen-
eral demurrer here interposed that under the allegations
of the bill of complaint a case entitling the complainants
to a partition of the property cannot lawfully be made by
appropriate and sufficient evidence.

Apparently the chancellor has not passed upon the evi-
dence in the cause.

The conveyance alleged to have been made by Uriah
Bowden to V. W. Shields as trustee carried if anything
the bare legal title to the trustee, subject to the grantor's
right during his lifetime to direct a conveyance of the
title and the entire benficial interest to others at his pleas-
ure, as well as subject to ultimate disposition as directed

by the trust deed made to the trustee. The interest attempted to be conveyed was not a vested right in the property to any of the beneficiaries named in the trust deed, but a contingent interest subject to the right of the grantor to direct a conveyance of the entire property to others at any time during the grantor's life. In effect the entire beneficial interest and right in the specific property remained in the grantor and could not pass at all, without his consent, till after his death, thus making the trust deed not an absolute conveyance of a vested right *in presenti*, of the property alleged to be a homestead. See Smith v. Crocker, 94 Ala. 295, 10 S. R. 258, 16 L. R. A. 576; 40 Cyc. 1085; Tuttle v. Rush, 116 Iowa 331, 90 N. W. Rep. 66. Because of the retention of the entire beneficial estate in the grantor during his life, the instrument in practical effect, is in the nature of a testamentary disposition of property alleged to be a homestead, and a testamentary disposition of homestead property is forbidden by law when the testator leaves a wife or a child.

If the property was and continued to be in fact and in law a homestead, the alleged trust deed not being an absolute conveyance of any vested estate in the land to take effect during the grantor's life time, is apparently ineffectual for the purpose designed. The court expresses no opinion whatever as to the probative force and effect of the evidence. Assignments of error relating to the answer and the evidence will not be considered on this appeal from the decree dismissing the bill of complaint, as the dismissal was not on the merits of the case shown by the pleadings and evidence, but on the general demurrer to the bill of complaint.

The decree sustaining the demurrer to and dismissing the bill of complaint, is reversed and the cause is re-

manded for appropriate proceedings on the merits of the pleadings and evidence.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.