FUSSELL, CARROLL W., Associate Judge.
This appeal is brought by the two married daughters and only surviving lineal descendants of their father from a final judgment of the County Judge determining that the property on which the deceased father was living at the time of his death was not of homestead nature and was subject to probate administration, so that his wife would be entitled to a one-third dower interest therein.
The facts in this case which are pertinent, sufficient and decisive thereof are undisputed. At one time the deceased was the owner of this property upon which he resided with his wife and two minor daughters. Thereafter the two daughters were married and resided elsewhere with their husbands, and their mother, the wife of the deceased, later died. The deceased continued to live on the property after the death of his wife, and three years later married his second wife, to whom he was still married at the time of his death. Immediately upon his marriage to the second wife the deceased moved into her home and lived there for 47 days, when they separated and he returned to his former home, where he continued to live until the time of his death. After the separation the second wife brought an unsuccessful suit for separate maintenance and alimony and the deceased *637 brought an unsuccessful suit for divorce. The parties never resumed cohabitation with each other, nor did they continue or resume their marital relationship after their separation.
The County Judge determined that the property on which the deceased was living at the time of his death was not a homestead as described and provided for in Section 1, Article 10 of the Florida Constitution, F.S.A. and which provides as follows :
“ * * * [a] homestead to the extent of one hundred and sixty acres of land, or the half of an acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars worth of personal property and the improvements on the real estate, shall be exempt from forced sale * * * and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. * * * ”
The descent of this homestead is provided for in Florida Statutes § 731.27, F.S.A., which provides:
“The homestead shall descend as other property; provided, however, that if the decedent is survived by a widow and lineal descendants, the widow shall take a life estate in the homestead, with vested remainder to the lineal descendants in being at the time of the death of the decedent.”
Clearly this property ceased to be homestead property upon the death of the decedent’s first wife, for no one lived on the property thereafter with him and his two daughters were married, living with and supported by their husbands. If this property thereafter became homestead property as described in the constitutional provision referred to above, it could not have done so prior to the marriage of the deceased to his second wife, when he again became the head of a family. This wife, however, never lived on the property and has never claimed it as her homestead or as the homestead of the deceased. In fact, she brought suit for separate maintenance from her husband and sought support and alimony payments from him, which, however, were refused by the court, due to the fact that she had sufficient and considerable assets of her own. Also, the deceased never considered that he was longer the head of a family, because he voluntarily departed from the home of his second wife; never thereafter contributed to her support, and in fact brought suit for divorce against her, and never resumed marital relations with her from that time to his death.
A case similar to the instant case is Barlow v. Barlow, 156 Fla. 458, 23 So.2d 723, in which Mr. Justice Terrell, speaking for the Supreme Court, said:
“(2-4) Under the law of this State, the homestead is not something to toy with and use as a ‘city of refuge’ from the law’s exactions. It was provided for the benefit of the family as a place of actual residence, as a haven where integrity, patriotism and respect for civic and moral virtues is generated. It is the legal atom that neither scientist nor legalist have discovered the means to crack. It can be waived by abandonment or by alienation in the manner provided by law.
s{: s}: í|í ‡ tfc
“The mere fact of being the wife of Barlow does not entitle her to homestead rights in his estate, neither do we find anything in the facts detailed that would in equity entitle her to the homestead. On the other hand we think that when the wife announces that she has moved out of the home for keeps and carries her belongings with her, secures employment in a city over 300 miles distant, announces to the world that she is through and secures an attorney to procure a divorce, this constitutes an abandonment of the homestead. Her conduct was in every sense consistent with abandonment and inconsistent with any purpose of return. Under such a state of facts she *638 will' not be permitted to return and lay-claim to the homestead after Barlow is dead. A claim for the divorce and a homestead cannot be asserted in the same breath.”
One of the earliest definitions of a head ■of a family is referred to in the case of Whidden v. Abbott, 124 Fla. 293, 168 So. 253, as follows:
“(2) In the case of Johns v. Bowden et al., 68 Fla. 32, 66 So. 155, this court defined what is necessary to constitute the head of a family under the provisions of section 1 of article 10 of our Constitution as follows: ‘To constitute a “head of a family” there must be at least two persons who live together in the relation of one family, and one of them •must be “the head” of that “family.” When the natural relation of husband and wife or parent and child, or that ■of being in loco parentis, does not exist, 'the relation should be one in which an established and continuing personal authority, responsibility, and obligation actually rests upon one as “the head of .a family” for the welfare of the others who, in law, should, or in fact, do, recognize and observe a family relation to the ■one as “the head of a family.” ’
“We do not think the facts are sufficient to establish the existence of a condition which would revive the homestead character of the property involved.”
Possibly one of the earliest cases dealing with facts most similar to the instant case is the case of Jordan v. Jordan, 100 Fla. 1586, 132 So. 466. In this case the court field that where the parties had permanently ■separated and were living separate and apart from each other and neither had any minor dependents of children, that the husband was no longer the head of a family and was no longer entitled to exemption as provided in section 1 of article 10 of the Florida Constitution. In this case the court ■said:
“When this arrangement was completed, it was agreed between them that Rufus should have the four apartments on the south and she the four on the north. They occupied rooms in their respective sides of the house, not resuming their marital relations and each paying his or her share of the expense of maintenance of the building, taxes and mortgage. Then Rufus died and about a year afterwards his children by his first marriage brought the suit for partition and cancellation of the two deeds.
“The answer set up a good defense as to the validity of the second deed at least. It was the result of a compromise between husband and wife who were separated from each other and the family dispersed. Rufus Jordan was no longer the head of a family within the meaning of the Constitution, § 1, art. 10. See Herrin v. Brown, 44 Fla. 782, 33 So. 522, 103 Am.St.Rep. 182; Matthews v. Jeacle, 61 Fla. 686, 55 So. 865; Johns v. Bowden, 68 Fla. 32, 66 So. 155; Johns v. Bowden, 72 Fla. 530, 73 So. 603.
“The only circumstance which differentiates this case from the case of Herrin v. Brown, supra, and that of Matthews v. Jeacle, supra, in which the definition of ‘head of a family’ was given, is that in those cases where the family had dispersed leaving only husband and wife living together and one dies the other is no longer the head of a family and entitled to the constitutional exemptions, in the instant case the family had dispersed and the husband and wife had separated, each maintaining a separate existence and neither dependent upon or recognizing the other’s authority.
“According to the holding in the case of Johns v. Bowden, 68 Fla. 32, 66 So. 155, 159, supra, to constitute ‘a “head of a family” there must be at least two persons who live together in the relation of one family, and one of them must be “the head” of that “family.”’”
The only case which might seem to differ from the above case is O’Neal v. Miller, 143 Fla. 171, 196 So. 478, 129 A.L.R. 295, *639 wherein the wife left the husband, taking a minor daughter and moving to another State where she remained for several years and did not return until after the husband’s death. The facts in this case, however, differ in several material aspects. In the first place, the wife and minor daughter did reside with the husband and father, who was the head of the family at that time, and in this particular property, prior to the time they moved away. No suits for divorce ar separate maintenance were maintained by either party. The court found that neither the wife nor the minor unmarried daughter acquired a home or domicile separate from that of the husband and father or abandoned the homestead during their absence. Also in this case there was a minor daughter who did not reach majority until after the death of her father and the institution of the above suit. Indicative of these facts, in this case the court said:
“(1,2) In this case the husband, the head of the family, was residing with his wife and minor unmarried daughter on his homestead in Florida, when the wife and minor unmarried daughter went to another state. They did not return to Florida for several years and until after the death of the husband. The marital relation continued and the husband resided on the homestead until his death. The wife did not acquire a permanent home or domicile separate from that of her husband; and it was her privilege, if not her duty, to return to the husband on the homestead at any time during his life, even if in law it was not also the privilege or duty of the minor unmarried daughter to return to her father’s home where he continued to reside till his death.
“Under such conditions and circumstances there was no abandonment of the homestead of the husband in Florida on which he resided with his wife and unmarried daughter as his family, before the wife and daughter went to another State, and on which homestead the husband continued to reside until his death, the marital relation continuing and neither the wife nor the minor unmarried daughter having acquired a home or a domicile separate from that of the husband and father.
“The essential facts in each case control the decision. The facts in this case are stated in the opinion of Mr. Justice Brown.
“In Herrin v. Brown, 44 Fla. 782, 33 So. 522, 103 Am.St.Rep. 182, all the children were grown and had permanently established homes away from the father’s homestead; and when the wife died, though the husband continued to live alone on the home-place, it was no longer the homestead of the husband because he had no wife and no one lived with him as a member of his family.
In Jordan v. Jordan, 100 Fla. 1586, 132 So. 466, the husband and wife by agreement and conduct abandoned the marital relation and the homestead exemption rights, the children having homes of their own.”
As indicated above, the court in distinguishing early cases shows that the difference between the instant case and these cases are material and decisive.
It is our opinion that the decision of the County Judge was correct and that the deceased did not at any time after the death of his first wife reside upon said property with anyone as the head of a family, nor did he thereafter reside on said property while he was in fact the head of a family. It is not necessary to determine whether or not the deceased abandoned his homestead at the time of his second marriage, because he, in fact, had no homestead to abandon at that time, since the homestead status of his property was lost at the time of the death of his first wife when he ceased to become the head of a family, and this status continued without interruption until his second marriage. The evidence shows that the second wife never lived on the hus *640 band’s property with him. The parties at the time of their separation completely abandoned their marital relationship; the husband sued for divorce; the wife sued for separate maintenance; the husband paid nothing towards the support of the wife after their separation; and the court refused to require him to do so. Under these facts there was no basis whatsoever for the husband to have been considered the head of a family at the time of his death.
The record and arguments presented by appellee on its cross-appeal fail to show error on the part of the lower court.
The above case is therefore affirmed.
Affirmed.
ALLEN, C. J., and SHANNON, J., concur.