994 So.2d 341 (2008)
Edward T. CUTLER, Appellant,
v.
Cynthia CUTLER, In re The Estate of Edith Alice Cutler, Appellee.
No. 3D04-3070.
District Court of Appeal of Florida, Third District.
September 3, 2008.
*342 Billbrough & Marks, and G. Bart Billbrough and Geoffrey B. Marks, for appellant.
Brian R. Hersh and Andrew Teschner; Shutts & Bowen and William Jay Palmer, for appellee.
Goldman Felcoski & Stone and Robert W. Goldman, Naples; Brigham and Moore and John W. Little, III, West Palm Beach, as Amicus Curiae.
Before GERSTEN, C.J., and COPE, GREEN, RAMIREZ, WELLS, SHEPHERD, SUAREZ, CORTIÑAS, ROTHENBERG, LAGOA and SALTER, JJ.

ON MOTION FOR REHEARING, REHEARING EN BANC, CLARIFICATION, AND CERTIFICATION
WELLS, Judge.
Appellant seeks rehearing, rehearing en banc, clarification, and certification of this Court's opinion filed February 28, 2007. We grant the motion for rehearing en banc, withdraw our prior opinion, and substitute the following modified opinion in its stead.

I. PROCEDURAL BACKGROUND
Edward T. Cutler appeals from an order declaring a devise of property to Cynthia Cutler, his sister, to be homestead property and exempt from the decedent's debts. While we affirm that portion of the order confirming that the devised property retained its homestead character even though titled in a trust at the time of the decedent's death, we reverse that portion of the order finding it exempt from the decedent's debts.

II. FACTS
In October 2003, approximately eight months before her death, Edith Cutler created a land trust for estate planning purposes. Edith, a widow with two adult children, named herself and her two children, Edward and Cynthia, co-trustees of the trust and conveyed her residence and an adjacent vacant lot to the trust subject to a life estate in herself. Edith was the sole beneficiary of this trust and retained the right to withdraw and appoint the principal of the trust to or for her benefit at any time. The trust also provided that the remainder interests in these properties, which were titled to the trust, would be distributed to Edith's estate upon her death:
[T]he entire remaining Trust Estate, including without limitation any accumulated *343 income, shall be distributed to the Estate of the Settlor to be administered and distributed as any other part of the Estate of the Settlor.
On the same day on which this trust was created, Edith deeded her residence and the adjacent vacant lot to it. She also executed a will, in which she specifically devised the residence titled to the trust to her daughter, Cynthia; she specifically devised the adjacent vacant lot titled to the trust to her son, Edward. She also directed that her debts be satisfied equally from both properties should the funds in her estate be insufficient to satisfy those debts:
[Article VI: I leave] all of my right, title and interest in the home in which I now live ... to my daughter, CYNTHIA.... [Article VII: I leave] all of my right, title and interest in the ... the vacant real property located next to my home in which I now live ... to my son, EDWARD....
[Article XII: I direct that] [a]ll claims, charges and allowances against, and costs of administration of [] my Estate... shall be paid out of the residuary portion of my Estate to the extent that gift suffices. The balance of such items shall be paid out of and shall reduce equally the gifts under Article VI (the gift of my home to Cynthia ...) and Article VII (the gift of the vacant real property next to my home to Edward ...) herein.

(Emphasis added).
On June 6, 2004, Edith died. Because estate funds were insufficient to satisfy all of Edith's creditors, Edward sought to have the two parcels devised to Edith's estate abate "equally" in accordance with his mother's express wishes. Cynthia objected. The trial court concluded that the residence retained its homestead status while titled in the trust and passed to Cynthia where it remained exempt from Edith's creditors after her death. Edward appealed. While we agree that the residence retained its homestead status even though titled in the trust, we do not agree that it passed to Cynthia free of the obligations Edith validly impressed upon it.

III. DISCUSSION

A. The property titled in the trust retained its homestead status.
To qualify for protection under Article X, section 4 of the Florida Constitution, a parcel of property must meet constitutionally defined size limitations and must be owned by a natural person who is a Florida resident who either makes or intends to make the property that person's residence. Art. X, § 4(a), 4(a)(1) Fla. Const. (1985); Estate of Van Meter, 214 So.2d 639 (Fla. 2d DCA 1968), approved 231 So.2d 524 (Fla.1970) (permanent "residence"); Raulerson v. Peeples, 77 Fla. 207, 81 So. 271 (1919)("owner"). See generally John F. Cooper and Professor Thomas C. Marks, Jr., Florida Constitutional Law: Cases and Materials, 618-619 (4th ed. 2006).
Edward claims that the residence devised to Cynthia does not qualify as homestead property because it was not owned by a "natural person" at the time of Edith's death. We disagree.
This court, and other district courts of appeal as well, have confirmed that property held in trust may be impressed, legally speaking, with the character of homestead. Callava v. Feinberg, 864 So.2d 429, 431 (Fla. 3d DCA 2003) (stating "[t]he constitutional provision does not designate how title to the property is to be held") (internal citations omitted), rev. denied, 879 So.2d 621 (Fla.2004); HCA Gulf Coast Hosp. v. Estate of Downing, 594 So.2d 774, 776 (Fla. 1st DCA 1991) (devise of house to spendthrift trust found to be irrelevant for *344 purposes of homestead under Article X, section 4 of the Florida Constitution (2003)).
This court has also confirmed that the Florida Constitution does not limit the types of interests that may qualify for homestead protection. See Callava, 864 So.2d at 431 (confirming that the Florida Constitution does not limit the estate that must be owned to qualify for homestead protection). As our sister court in Southern Walls, Inc. v. Stilwell Corp., 810 So.2d 566 (Fla. 5th DCA 2002), has stated:
The Constitution limits the homestead land area that may be exempted, but it does not define or limit the estates in land to which homestead exemption may apply; therefore, in the absence of controlling provisions or principles of law to the contrary, the exemptions allowed by section 1, article 10 [now Article X, section 4], may attach to any estate in land owned by the head of a family [now natural person] residing in this state, whether it is a freehold or less estate, if the land does not exceed the designated area and it is in fact the [natural person's] home place.
S. Walls, Inc., 810 So.2d at 570 (quoting Menendez v. Rodriguez, 106 Fla. 214, 221, 143 So. 223, 226 (1932) (Whitfield, J., concurring)).
Based on the terms of the trust involved in this case, the remainder estate in Edith's residence titled in Edith's trust was correctly determined by the lower court to qualify for homestead protection.

B. The constitutional exemption from creditors' claims did not inure to Cynthia's benefit following Edith's death.
While we agree with the trial court's conclusion that the property devised to Cynthia was Edith's homestead, we cannot agree that the constitutional exemption from creditors' claims inured to Cynthia's benefit.
It is a cardinal rule of testamentary construction that "the primary objective in construing a will is the intent of the testator." McKean v. Warburton, 919 So.2d 341, 344 (Fla.2005) ("a person can dispose of his or her property by will as he or she pleases so long as that person's intent is not contrary to any principle of law or public policy" (citing Mosgrove v. Mach, 133 Fla. 459, 182 So. 786, 791 (1938))); Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1, 2 (1945) ("In will construction the primary objective of the courts is to ascertain and give effect to the intentions of the testator. In the ascertainment of such intention the will in its entirety will be considered, and when once the intention has been discovered the wording of the will be given such liberal construction and interpretation as will effectuate the intention of the testator so far as may be consistent with established rules of law.") (citation omitted); Phillips v. Estate of Holzmann, 740 So.2d 1, 2 (Fla. 3d DCA 1998) ("The polestar in construing any will is to ascertain the intent of the testator.").
In this case, the trust agreement expressly stated that the corpus of the trust, that is, the interests in Edith's residence and the adjacent vacant lot, were to pass to, and be administered as part of, her estate upon her death. Edith's will provides that the interest in her residence held by the trust should be passed to her daughter and that the interest in the adjacent vacant lot should pass to her son. She also directed that her debts be satisfied equally from both properties should the funds in her estate be insufficient to satisfy those debts.
In City National Bank of Florida v. Tescher, 578 So.2d 701, 703 (Fla.1991), the Florida Supreme Court held that property *345 protected under article X, section 4(c) may be devised in a will to anyone if the owner is survived by neither spouse nor minor child. Warburton takes Tescher one step further and holds that homestead property not devised to a specific beneficiary passes to the residuary and retains article X, section 4 protection if the residuary beneficiaries are also qualified for protection. Warburton, 919 So.2d at 341; see also Snyder v. Davis, 699 So.2d 999, 1003-04, 1005 (Fla.1997) (confirming that homestead property not devised specifically becomes part of the residuary and will continue to be protected under article X, section 4 if the residuary beneficiary is also entitled to protection). Warburton also confirms that a testator may direct that homestead property be used after death in the same manner the testator could have used such property while alive. Warburton, 919 So.2d at 347.
This is not a recent development. It has long been recognized that the owner of homestead property may devise that property in a manner that terminates the protections accorded by article X, section 4. In Estate of Price v. West Florida Hospital., Inc., 513 So.2d 767, 767 (Fla. 1st DCA 1987), the court confirmed that where a testator directs the sale of homestead property and distribution of the proceeds, the proceeds lose their homestead character and become part of the estate subject to administrative costs and creditors' claims. As the court explained, this is because the same result would have obtained had the testator sold the property and either gifted or used the proceeds while alive. Id. ("[I]f Mrs. Price had sold her house during her lifetime and distributed the proceeds to her two children, those proceeds would unquestionably lose their homestead character and would be subject to the claims of her creditors."); see Knadle v. Estate of Knadle, 686 So.2d 631, 632 (Fla. 1st DCA 1997) (holding that because a will specifically directed that homestead property be sold and the proceeds placed in the residue for distribution along with other assets, it lost its homestead character); see also Thompson v. Laney, 766 So.2d 1087, 1088 (Fla. 3d DCA 2000) (confirming that where a will directs that homestead property be sold and the proceeds distributed, the proceeds lose their homestead protection).
Although Edith did not direct that her home be sold, she did direct, in a specific manner, that it be used to satisfy her debts. This was the equivalent of ordering it sold and the proceeds distributed to pay debts, actions which Price and its progeny confirm results in loss of homestead protections.[1] While the benefits of homestead protections vest in a qualified beneficiary at the moment of a testator's death,[2] the property in this case passed *346 into the beneficiary's hands impressed with the obligation to pay the testatrix's debts, an obligation that deprived the property of homestead protection under article X, section 4.
This is, of course, wholly consistent with article X, section 4 which expressly confers the power on the owner of homestead property to sell, mortgage, or give it away. See Art. X, § 4(a)(2)(c), Fla. Const. ("The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer title to an estate by the entirety with the spouse."). If a homestead owner (with no spouse and children) can sell, mortgage or give homestead property away while alive and use the proceeds from any such transaction as he or she sees fit, that same owner may give the property away upon death and order it to be used to satisfy debts even if such a devise means the property will no longer enjoy homestead protection.
In this case, rather than selling or mortgaging her homestead interests while alive and using the funds recognized to pay debts, Edith devised her homestead property to her daughter and expressly directed that this devise be used to satisfy a portion of her debts. This devise is wholly consistent with Tescher, Snyder, and Warburton and with article X, section 4 of the Florida Constitution and should be given effect.

IV. CONCLUSION
In sum, if it was legally permissible for Edith to have left her properties to someone outside of her family not qualified for homestead protection, which would make this property subject to payment of debts, we see no reason why she could not lawfully leave it to her heirs with the provision that the properties be available to satisfy her debts. While we are hard put to imagine a situation where the desire to satisfy one's debts is deemed anything but laudable, we reach our conclusion today not out of concern for Edith's creditors, but out of consideration for Edith's legal right to have her wishes followed in the absence of any constitutional impediment.[3]See Tescher, 578 So.2d at 703. We therefore grant rehearing en banc and reverse that part of the decision below concluding that the constitutional exemption from the *347 claims of decedent's creditors inured to the property Edith Alice Cutler devised to Cynthia Cutler.
COPE, GREEN, RAMIREZ, SUAREZ, CORTIÑAS, ROTHENBERG and SALTER, JJ., concur.
SHEPHERD, J., dissenting.
The reason "why [Edith] could not lawfully leave her homestead property to her heirs with the provision that the properties be available to satisfy her debts," see supra p. ___, is simply because the people of the State of Floridain the organic document by which they have joined themselves together to be governed and livehave expressly prohibited her from doing so.
With certain exceptions not applicable to this case, Article X, section 4(b) of the Florida Constitutionof which the majority makes no mentionstates that the exemption from forced sale of Edith's property to satisfy her debts that inured to Edith's benefit during her lifetime "inure to [the] heirs of the owner" upon her death.[4] As recognized by the majority, Edith specifically devised her residence to her daughter. There are no other devises of the property in her will. See § 731.201(8), Fla. Stat. (2003) (defining a devise as a "testamentary disposition of real or personal property"). By virtue of Edith's specific devise of her residence to Cynthia, title to the property passed to Cynthia upon Edith's death, in a twinkle of an eye as it were. Estate of Hamel v. Theodore Parker, P.A., 821 So.2d 1276, 1280 (Fla. 2d DCA 2002) (holding that homestead vests on death, even in the absence of a court order confirming homestead status). It passed outside Edith's estate. Clifton v. Clifton, 553 So.2d 192, 194 n. 3 (Fla. 5th DCA 1989) (noting "[h]omestead property, whether devised or not, passes outside of the probate estate"); Cavanaugh v. Cavanaugh, 542 So.2d 1345, 1352 (Fla. 1st DCA 1989); see also § 731.201(29), Fla. Stat. (2003) (defining "protected homestead" as "property described in s. 4(a)(1), Art. X of the State Constitution on which at the death of the owner the exemption inures to the owner's surviving spouse or heirs under s. 4(b), Art. X of the State Constitution"); § 733.607(1), Fla. Stat. (2003) (stating that "every personal representative has a right *348 to, and shall take possession or control of, the decedent's property, except the protected homestead"). This has been so since 1868, when the people of this state inserted in their constitution an article protecting homestead from forced sale. See Ch. 1715No. 3, § 6, Laws of Fla. (1869) ("Real and personal estate, exempted from forced sale under any process of law, shall likewise, after the death of the owner, being the head of the family, be exempt from sale, in all cases in which any widow or infant children of the owner shall survive and claim such exemption, and such property or the rents and profits shall not go into the hands or possession of an executor or administrator as assets for the payment of the debts of such deceased owner...."); Wilson v. Fridenb[e]rg, 19 Fla. 461, *6 (1882) (holding that "[t]he homestead does not pass under the will"); see also Palmer v. Palmer, 47 Fla. 200, 203, 35 So. 983 (1904) (quoting Wilson v. Fridenberg, 21 Fla. 386, 389 (1885) (Fridenberg II), and stating that "[i]n the same case [Fridenberg II], when again before the court ... it was held that so far as the children, heirs at law of the deceased homesteader, were concerned, `it was the homestead of the testator. It was beyond his power to dispose of it by will. If he owed no debts, his heirs at law were entitled to it by the laws of descent. If he owed debts, they were entitled to it by the laws of descent, freed from the debts by force of the constitutional provision of homestead exemption'").[5]
Despite this unbroken history, the majority seizes upon the language of an administrative will provision located among the final paragraphs of Edith's will to take the dubious leap that Edith preferred her creditors over her children. As I read her willwhich contains two unambiguous, specific devises to her heirs, a residuary clause that split any residuary between these same two heirs,[6] and an administrative will provision seeking, ineffectually, at least as to the devise to Cynthia, to alter the general provisions of Florida's abatement *349 statute, section 733.805, Florida Statutes (2003), a provision that applies only to probate assets and only during the administration of estatesEdith's true desire was to do all she could to get her residence and the vacant lot into the hands of her daughter and son respectively. If it had been otherwise, the accepted way for Edith to assure her creditors came first would have been either to devise the two parcels to her estate to be held until it was known whether they were needed for estate expenses or, alternately perhaps, to order them sold upon her death with the proceeds to be administered and distributed as set forth in her will. See McKean v. Warburton, 919 So.2d 341, 347 (Fla.2006). My deduction from the record in this case is that neither Edith nor her estate planning advisor was cognizant of the "inuring clause" benefit that inheres in heirs who take homestead property either by devise or descent in this state.
However, as I intimated at the beginning, Edith's intent is not relevant to the resolution of this case. As the Fifth District Court of Appeal observed more than two decades ago:
The homestead character of a piece of property is not created by, nor is it dependent upon, any general or specific mental intent on the part of the owner to create or maintain a certain piece of property as his homestead, but arises and attaches from the mere existence of certain facts in combination of place and time.
Pierrepont v. Humphreys (In re Estate of Newman), 413 So.2d 140, 142 (Fla. 5th DCA 1982). Homestead is not all for the benefit of the homesteader. See Walker v. Mickler, 687 So.2d 1328, 1331 (Fla. 1st DCA 1997). At the moment of Edith's death, her residence became "protected homestead" in Cynthia. It automatically passed to Cynthia, outside of Edith's estate. Whether Edith's homestead would be needed to pay expenses of her estate was not known or knowable at that time. See generally Ch. 733, Fla. Stat., pt. IV ("Duties and Powers of Personal Representative"). Edith's personal representative had no right or ability to hold the homestead in the estate until the determination was made. Article XII of Edith's will is an administrative provision declaring how she wished her devises to abate to pay the expenses of her estateif the devises were probate assets. In this case, at least one of those devisesEdith's devise of her residencewas homestead property. It was never a probate asset. See § 733.607(1), Fla. Stat. (2003); Thompson v. Laney, 766 So.2d 1087, 1088 (Fla. 3d DCA 2000). Edith's administrative direction that it participate, if necessary, in the payment of her estate expenses at some future time during the administration of Edith's estate, failed. Thompson, 766 So.2d at 1088.
The majority urges to the contrary on the strength of City National Bank v. Tescher, 578 So.2d 701, 703 (Fla.1991), which holds that a prenuptial waiver by a spouse of his homestead rights under Article X, section 4(c) renders the constitutional limitation on the devise of homestead property found therein inoperable where there is also no other constitutionally protected member present. However, our case is not an Article X, section 4(c) case. Cynthia's claim in this case is made under Article X, section 4(b). Article X, section 4(b) has existed in the Florida Constitution for more than 140 years for the sole purpose of "promot[ing] the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have been given under such law." Pub. Health Trust of Dade County v. Lopez, 531 So.2d 946, 948 (Fla.1988). *350 Cynthia is a constitutionally protected class member under Article X, section 4(b) of the Florida Constitution. For reasons of her own, she has determined to exercise that right.[7] Her mother can no more waive or modify Cynthia's constitutional right to receive the deathtime benefit expressly given to her by Article X, section 4(b) of the Florida Constitution, than the decedent in Tescher could waive the constitutional right of her spouse (or a minor child, if there had been one) to insist upon the constitutional limitations on her ability to devise her homestead property found in Article X, section 4(c) of the Florida Constitution. Tescher offers no support to the majority in this case.
Nor do the "sale cases" cited by the majority offer any comfort to the majority. See supra p. ___. In both Estate of Price v. West Florida Hospital, Inc., 513 So.2d 767 (Fla. 1st DCA 1987), and Knadle v. Estate of Knadle, 686 So.2d 631 (Fla. 1st DCA 1997), the testators expressly directed their homestead properties be sold upon their respective deaths and the proceeds distributed either equally to their surviving adult children in Estate of Price or under the residuary clause of the will in Knadle. These and a whole host of other Florida cases hold that, in a contest between the application of Article X, section 4(b) and a will directiveas was the circumstance in the two cases cited by the majorityprotected homestead becomes an estate asset if and only if "the will specifically orders that the [homestead] property be sold." Estate of Hamel, 821 So.2d at 1279; see also McKean v. Warburton, 919 So.2d 341, 347 (Fla.2006) (quoting Knadle); Engelke v. Estate of Engelke, 921 So.2d 693, 696 (Fla. 4th DCA 2006) (stating that unless a trust specifically directs homestead to be sold, rights of heirs attach at death and homestead property is protected from creditors). Thompson, cited by the majority, confirms the degree of specificity required in a sale provision in a will to overcome a "protected homestead" challenge:
Florida law specifically provides that homestead property is not subject to the administration of the court unless the will specifically requires that the property be sold. See §§ 733.607-608 Fla. Stat. (1995); Knadle v. Estate of Knadle, 686 So.2d 631 (Fla. 1st DCA 1996) (where a testatrix directs in her will that her homestead be sold and the proceeds divided between her adult children, the proceeds lose their homestead character and become subject to the claims of creditors); Estate of Price v. West Florida Hosp., Inc., 513 So.2d 767 (Fla. 1st DCA 1987) (proceeds of sale of testatrix' homestead, pursuant to will directing sale and distribution of proceeds to adult children, lost their homestead character and were subject to creditors' claims). The will in the present case makes no such provision.
Thompson, 766 So.2d at 1088. Underlying the evident constraint apparent in these cases is "the strong public policy of this state protecting the homestead against forced sale[.]" Knadle, 686 So.2d at 632. There is no support in these cases for the majority's "sale equivalent argument." See supra p. ___. It also flies in the face of the liberal interpretation that the courts of this state are required to afford Florida's homestead laws for the benefit of the homesteader during her lifetime and her heirs thereafter. See, e.g., Engelke, 921 So.2d at 695 ("Florida courts have consistently emphasized that the homestead exemption *351 is to be liberally construed in the interest of protecting the family home against the claims of creditors.").
The case before us is indistinguishable from Engelke. In that case, Paul Engleke and his wife, Judy, owned an individual one-half interest in their homestead property (as tenants in common) in separate inter vivos trusts when Paul died. Id. at 694. At the time of his death, he had three adult children from a previous marriage. Id. In a prenuptial agreement, Paul and Judy waived their homestead rights under Article X, section 4(c) of the Florida Constitution. Because Judy waived her homestead rights as a spouse and Paul had no minor children, there was no limitation on his ability to devise his individual one-half interest in their home. Id. at 696. Paul's trust instrument provided that after his death, Judy would have the right to live in the residence during her lifetime, provided that she pay all of the expenses to maintain the home.[8] Upon her death or removal from the home, Paul's children would receive the property through the residuary provisions of the trust. Id. at 694. Article IV, paragraph A of Paul's trust contained a paragraphdescribed by that court as a "general direction"remarkably similar to that found in Article XII of Edith's will. It provided:
Except as otherwise specifically provided in this Article, upon the death of Grantor, to the extent that Grantor's residuary probate estate shall have insufficient liquidity as so certified by the Personal Representative of Grantor's estate, Trustee shall pay from the trust estate: ... (2) all of Grantor's funeral expenses, claims allowable against Grantor's estate, costs of last illness and costs of the administration of Grantor's estate including ancillary.
Id.
As in our case, there were insufficient assets in Paul's residuary probate estate to pay the claims against the estate or a family allowance the trial court ordered be paid to Judy. Id. at 695; see also § 732.403, Fla. Stat. (2004). Judy moved to compel the transfer of Paul's individual one-half interest in the homestead property from the trust to Paul's estate to pay these charges. Engelke, 921 So.2d at 695. Paul's son, Michael, as successor trustee to Paul's trust, argued his father's individual one-half interest was "protected homestead" not subject to invasion for the payment of the charges. Id. Our sister court, the Fourth District Court of Appeal, agreed. Id.
At the outset, the court expressly found that Paul's waiver of his homestead interest under Article X, section 4(c) had no effect on Michael's right to maintain his own ability to assert his rights as an heir under Article X, section 4(b) of the Florida Constitution. The court said,
[T]he property continued to remain [Paul's] homestead.... Thus, the homestead continued to retain the constitutional protections provided in sections 4(a) and (b). Paul's homestead interest was protected from creditors by section 4(a) while he was alive, and his heirs can claim the exemption for themselves under section 4(b), even though they retain only a remainder interest in the property. See Hubert v. Hubert, 622 So.2d 1049 (Fla. 4th DCA 1993).
Engelke, 921 So.2d at 696-97. In so holding, the court expressly rejected the "sale *352 equivalent" contention urged by the majority here. The court continued:
A homestead devised to an heir is protected from forced sale to pay the expenses of administering the estate. See Thompson v. Laney, 766 So.2d 1087 (Fla. 3d DCA 2000). It is only when the testator directs that a freely devisable homestead be sold and distributed to a devisee that the constitutional protection from creditors is disregarded. See Knadle v. Estate of Knadle, 686 So.2d 631 (Fla. 1st DCA 1996). In such a case, the decedent has devised money and not the homestead itself. Otherwise, the homestead protections against forced sale attach upon the moment of the owner's death. See In re Estate of Hamel, 821 So.2d 1276, 1280 (Fla. 2d DCA 2002) (stating, "If the property is homestead on the date of death, the homestead protection is impressed upon the land and the protection from creditors' claims inures to the benefit of the heirs to whom the property is devised.").
Here, Paul used a revocable living trust to hold title to his homestead. We do not think that the use of the trust removes the homestead protection to his heirs, to whom the property ultimately passes. Revocable living trusts are widely used will-substitute devices that provide flexibility in managing the settlor's assets during his or her lifetime. In other contexts, revocable trusts are treated similarly to wills. See, e.g., § 732.4015, Fla. Stat. (2005) (treating disposition by trust of grantor's homestead as a "devise" where grantor is survived by spouse or minor child); see also Johns v. Bowden, 68 Fla. 32, 66 So. 155 (1914) (retention of entire beneficial estate in grantor during his lifetime makes revocable trust in the nature of a testamentary disposition of homestead property); In re Johnson's Estate, 397 So.2d 970 (Fla. 4th DCA 1981). Frequently, as here, the trust contains provisions regarding payment of expenses of the estate after the settlor's death. We have found no case in which a general direction to pay the estate expenses has trumped the constitutional homestead protections which are the rights of the heirs as much as the decedent. Because revocable trusts are merely will substitute devices, we see no reason why the reasoning of Thompson v. Laney, precluding use of the homestead to satisfy estate debts, should not apply with equal force when homestead property is transferred through a revocable trust. Therefore, unless the trust specifically directs that the freely devisable homestead be sold, the rights of the heirs attach at the death of decedent, and the property is protected from the claims of all creditors. Knadle, [686 So.2d at 632].
Engelke, 921 So.2d at 696-97 (emphasis added).
I find the reasoning of Engelke both flawless and directly applicable to the case at bar. By requiring the devise to Cynthia to abate to pay estate expenses, we incorrectly become the first court to hold that a general direction to pay estate expenses trumps constitutional homestead protections.
I respectfully dissent.[9]
GERSTEN, C.J., and LAGOA, J., concur.
NOTES
[1] See generally Direction in will for payment of debts and expenses as subjecting exempt homestead to their payment, 103 A.L.R. 257 (1936) ("Express directions in a will for the payment of the testator's debts before devises shall take effect generally result in the subjection of a devised homestead, which would otherwise be exempt, to the payment of such debts.").
[2] See In re Estate of Hamel, 821 So.2d 1276, 1279-80 (Fla. 2d DCA 2002) (confirming that the proceeds from the sale of homestead property completed after a testator's death remained protected in the hands of adult children to whom the property was devised in the residuary estate and observing that "[g]enerally, property rights passing by virtue of the death of a person vest at the time of death. The same has been held true for homestead. If the property is homestead on the date of death, the homestead protection is impressed upon the land and the protection from creditors' claims inures to the benefit of the heirs to whom the property is devised.") (citations omitted); Thompson, 766 So.2d at 1088 (confirming that the recipient of a specific devise of homestead property "was entitled to sell the homestead property and its contents and keep the proceeds of the sale [secure from creditors]," because the will had not "specifically require[d] that the property be sold"); see also Engelke v. Estate of Engelke, 921 So.2d 693, 696-97 (Fla.4th DCA 2006) (holding that "a general direction" in a trust document to pay the claims and expenses of the grantor's estate, does not subject protected homestead property to creditors claims).
[3] We find this analysis consistent with the Supreme Court's recent decision in Chames v. DeMayo, 972 So.2d 850 (Fla.2007). In DeMayo, the Court decided that a client's waiver of the constitutional homestead exemption in a retainer agreement with a law firm, which allowed the law firm to enforce a charging lien against all of the client's property, including his homestead, was unenforceable. The Court came to this conclusion in good measure based on the reasonable fear that such a waiver could unwittingly become an everyday occurrence, in effect eviscerating this important right. Thus, the Court observed in part that "[w]hile the exemption can be waived in a mortgage, for over a hundred years we have held that it cannot be waived in an unsecured agreement." DeMayo, 972 So.2d 850, 852. DeMayo relied in part on Carter's Administrators v. Carter, 20 Fla. 558, 570 (1884), wherein the Court many years ago observed that "the very nature of the transaction [a mortgage or bill of sale] implies the exercise of discretion and the contemplation of inevitable consequences." It is clear to us that the execution of a will, with its statutorily imposed safeguards, demonstrates that same "contemplation of inevitable consequences." Thus, when a waiver of homestead exemption is expressed in a will, and the rights of neither a spouse nor a minor child are at issue, that intentional waiver should be given effect.
[4] Article X, section 4, reads as follows in its entirety:

SECTION 4. Homestead; exemptions.
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family;
(2) personal property to the value of one thousand dollars.
(b) These exemptions shall inure to the surviving spouse or heirs of the owner.
(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.
Art. X, § 4(a)-(c), Fla. Const.
[5] The substance of the provisions of the Florida Constitution of 1868, see Art. IX, Fla. Const. (1868), providing to owners of homestead property both a lifetime and deathtime protection of their property from forced sale to pay estate expenses is remarkably similar to the provisions providing the same relief today. See Art. X, § 4(a), (b), Fla. Const. (2003). Article X, section 4(c) of the present Constitution, separately placing restraints on alienation of homestead during the homesteader's lifetime and limitations on devise, first appeared in its current form in the 1968 Constitution. Its historical development is substantially unrelated to that of Article X, sections 4(a) and (b). See Donna Litman Seiden, There's No Place Like Home (stead) in FloridaShould It Stay That Way?, 18 Nova L.Rev. 801 (1994). For a complete version of the 1868 Florida Constitution, see Art. IX, Fla. Const. (1868), available at http://www.law.fsu. edu/crc/conhist/contents.html.
[6] Article VIII, the residuary clause of Edith's will, reads as follows:

All of the rest, residue and remainder of my Estate, of whatsoever kind and character and wheresoever situated, which I may own at the time of my death, including without limitation all lapsed legacies, devises and bequests and any property over which I may have any power of appointment at my death, I give, devise, bequeath and appoint as follows:
A. One-half (1/2) to my daughter, CYNTHIA VIRGINIA CUTLER, or if she does not survive me, to the Trustee of the Edith A. Cutler Trust under Agreement of August 15, 1994 between Edith A. Cutler as Settlor and First National Bank of South Miami as Trustee, and
B. One-half (1/2) to my son, EDWARD TROTTER CUTLER, or if he does not survive me, to CYNTHIA VIRGINIA CUTLER, or if she does not survive me, to the Trustee of the Edith A. Cutler Trust under Agreement of August 15, 1994 between Edith A. Cutler as Settlor and First National Bank of South Miami as Trustee.
(emphasis added).
[7] As is not uncommon in contests between siblings after death of a parent, this case presents a history of pre-death estrangement between the contestants in this case. It is not for us to seek to salve such wounds.
[8] The fact the deathtime disposition of his one-half interest in the homestead property was accomplished through his lifetime intervivos trust was immaterial to the court's analysis. As the court stated, "[r]revocable living trusts are widely used will substitute devices...." Id. at 697.
[9] Upon the issuance of the original panel opinion in this casewhich concluded that the lifetime exemption enjoyed by Edith inured to CynthiaEdward, for the first time, argued to us that if the parcel devised to Cynthia is clothed with Article X, section 4(b) inuring clause protection, then the adjacent vacant parcel devised to him also qualifies, so that both parcels are exempt from forced sale to pay Edith's last expenses. Adjacent parcels can qualify for homestead protection. See Quigley v. Kennedy & Ely Ins., Inc., 207 So.2d 431, 433 (Fla. 1968) (affording homestead protection to adjacent parcels of rural land to the extent of 160 acres irrespective of platting or use); White v. Posick, 150 So.2d 263 (Fla. 2d DCA 1963) (affording homestead protection to adjacent parcels within a municipality but limited to the residence of the owner or owner's family). We, of course, cannot address the merits of this contention. Herskovitz v. Hershkovich, 910 So.2d 366, 367 (Fla. 5th DCA 2005) ("[A]s a general rule, reviewing courts will not consider claims of error which are raised for the first time on appeal. . . .").